## Harleysville Mutual Casualty Company *v.* Blumling, Appellant.

Argued March 12, 1968. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*J. Cris Soich,* with him *Stokes, Lurie & Tracy,* for appellant.

*Carl W. Brueck, Jr.,* with him *Brueck, Walker & Brueck,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 16, 1968:

Appellant, Francis J. Blumling, suffered serious personal injuries when he was involved in a collision with a motor vehicle being operated by one James Adams. At the time of the collision, appellant was operating a vehicle owned by his employer, Lockhart Iron & Steel Company. There is no dispute that the collision between the vehicles was caused by the negligence of Adams.

It is conceded that at the time of the collision, the Adams vehicle was not covered by a liability insurance policy. The Lockhart vehicle which appellant was operating was covered by a liability insurance policy written by the Travelers Insurance Company, which policy contained a protection against uninsured motorists clause with a liability limit of $10,000. Appellant owned a private automobile which was covered by a liability insurance policy issued by appellee, Harleysville Mutual Casualty Company. This policy also contained a protection against uninsured motorists clause and a liability limit of $10,000. It is agreed that both the Travelers and Harleysville policies were in full force and effect at the time of the accident.

Appellant recovered $10,000 from Travelers under Lockhart's uninsured motorist coverage, and subsequently sought to recover under the uninsured motorists coverage contained in his Harleysville policy. There appears to be no dispute that appellant's injuries were such that he suffered damages in excess of $10,-000. Harleysville, nevertheless, denied coverage under its policy and commenced an action in the court below for declaratory judgment. That court entered judgment for Harleysville and this appeal followed.

We are once again faced with a question of first impression in this Commonwealth, relative to the extent of the coverage afforded by the uninsured motorists protection mandated by the Act of August 14, 1963, P. L. 909, 40 P.S. §2000.[1] While the appellate courts of Pennsylvania have not decided this specific question, other jurisdictions have faced the problem and have reached differing conclusions. We are in agreement with those jurisdictions which, in interpret-

---

[1] "No policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV, of 'The Vehicle Code', act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom: Provided, however, That the named insured shall have the right to reject such coverage in writing: And provided further, That unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." (footnotes omitted)

ing uninsured motorist statutes similar to ours, have reached conclusions opposite to that reached by the court below.

Appellee's position, reduced to its essentials, is two-fold: (1) that Adams was not an uninsured motorist within the meaning of the policy language, by reason of the fact that the Travelers policy was applicable; and (2) that the "other insurance" clause contained in its policy precludes recovery. We disagree on both counts.

The Harleysville policy defines uninsured automobiles as "an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder . . ." The policy further obligates Harleysville "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile;". It is clear from this policy language that the Adams vehicle was uninsured and that Adams was an uninsured motorist. The fortuitous circumstance of the existence of the Travelers policy insuring the Lockhart vehicle cannot be construed to alter Adams' status as an uninsured

motorist. The Travelers policy did not insure Adams or his vehicle, it insured Lockhart and its vehicle. To interpret the policy language in the manner contended for by appellee would be to defy logic and reason.

The more difficult question is presented by appellee's second argument involving the "other insurance" clause. In opposition to that argument, appellant contends that the "other insurance" clause violates the intendment of the uninsured motorist law and is, therefore, inapplicable. Such a conclusion is in accord with rulings in other jurisdictions whose rationale we find most consistent with our views.

The "other insurance" clause which appellee seeks to rely upon to avoid liability reads as follows: "Part IV. Protection against Uninsured Motorists—'Other Insurance'. With respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this Coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

Such liability limiting clauses were considered and rejected in Oregon, Virginia and Florida, in decisions

reaching the fundamental nature and purpose of uninsured motorist coverage. In *Smith v. Pacific Automobile Ins. Co.*, 240 Or. 167, 400 P. 2d 512 (1965), the Oregon court construed a statute similar to ours in the light of an "other insurance" clause. The court held, in essence, that the "other insurance" clauses contained in the uninsured motorist sections of the respective policies of the guest passenger and his host were repugnant to each other and to the statute requiring uninsured motorist protection. The statute required the furnishing of the coverage and the court would not permit the carrier to circumvent the requirement by attempting to limit its liability. Moreover, as pointed out in *Smith*, if each policy seeks to limit its liability by the availability of other coverage, the result could easily be no coverage at all, each carrier pointing to the coverage of the other's policy.

Virginia reached the same result in *Bryant v. State Farm Mutual Ins. Co.*, 205 Va. 897, 140 S.E. 2d 817 (1965). There, the plaintiff, who had been injured as the result of the negligence of an uninsured motorist, was permitted to recover from two carriers. The plaintiff had been operating his father's car at the time of the accident. He recovered the limit of the uninsured motorist coverage of his father's policy and then was permitted to proceed against his own carrier under the similar coverage contained in that policy, the Virginia court holding that to forbid such recovery would prevent the accomplishment of the legislative intent of the Virginia statute.

In *Sellers v. U.S.F. & G. Co.*, 185 So. 2d 689 (1966), Florida joined the group of jurisdictions adopting this view. In that case, plaintiff was a guest passenger in a vehicle which collided with the vehicle of an uninsured motorist. She qualified as an insured under both her host's policy and her husband's garage liability

policy, both of which, in accordance with Florida law, contained uninsured motorist coverage. Here too, the court allowed recovery against both carriers on the theory that the "other insurance" clauses of the poli· cies were in conflict with the Florida uninsured mo-torist statute and, therefore, invalid.

Other jurisdictions have reached other conclusions, but we are most impressed by the reasoning of the courts which reached the results stated above. The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist.

In Pattani v. Keystone Ins. Co., 426 Pa. 332, 231 A. 2d 402 (1967), we quoted with approval the language of Katz v. American Motorists Ins. Co., 53 Cal. Rptr. 669 (1966), that such statutes are "designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injuries through the negligent use of those highways by others." We there declared for liberal construction of the statute in order to achieve the legislative intent, and we here adhere to that declaration.

We do not wish to imply that injured parties may be permitted to pyramid separate coverages so as to recover more than the actual loss. Such a ruling is not necessary to the decision of this case and we do not make it. We do hold, however, as did the court in Sellers, supra, that where the loss exceeds the limits of one policy, the insured may proceed under other

available policies up to their individual limits or to the amount of the actual loss.

Finally, we are not impressed by appellee's argument that the Pennsylvania statute must be distinguished, as to its intent, from others, by reason of the fact that our act permits the insured to reject uninsured motorist coverage. While the coverage may be rejected, it must be noted that the carrier is required to include it in every policy, and only an affirmative written rejection is effective. We are convinced that the overriding interest of the legislation was to provide the coverage without positively forcing it down the throat of the insured.

Appellee has received its premium attributable to this coverage, which coverage the Act of Assembly requires it to furnish. We will not permit it to avoid its statutorily imposed liability by its unilateral insertion into the policy of a liability limiting clause repugnant to the statute.

Judgment reversed and here entered for appellant.

Mr. Justice JONES dissents.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.