## Government Employees Insurance Company v. Amabile

*Bernard M. Gross,* of *Gross and Sklar, P.C.,* for petitioner.

*Anthony J. Frayne* of *White & Williams,* for respondents.

GREENBERG, *J.,* November 28, 1978—This matter is now before the court on a petition for declaratory judgment filed by the injured minor's father's (insured) insurance company (Uninsured Motorist carrier) to determine whether the Uninsured Motorist coverage under the policy is appli-

cable to injuries suffered by the minor in an accident.

The undersigned had conducted conferences in the case involving the claim against Q.C. Construction Corporation as a result of which the insured's claim on behalf of his minor son was settled as more fully set forth hereafter. Counsel for the Uninsured Motorist carrier and the insured agreed that because of our knowledge of the case obtained as a result of the conferences, the petition and answer be referred to us for consideration and ruling. Counsel further agreed that there was no dispute as to the facts and that the matter presented to us was one of law as to the interpretation of the policy and its application to the facts. There was thus no necessity for the taking of any testimony.

The undisputed facts indicate that on April 19, 1973, the insured's minor son was standing on the southwest corner of 17th and Wolf Streets in the City of Philadelphia. At the same time a television cable was being strung across 17th Street on electric company poles by employes of the Q.C. Construction Corporation. While the cable was being raised across 17th Street, a motor vehicle travelling south on 17th Street hit the cable, causing the cable to snap and strike the minor causing him to be thrown into the air and land on his head. The vehicle striking the cable failed to stop and was never identified. As a result of the incident, the minor sustained severe and permanent personal injuries.

Suit was subsequently instituted by the insured on behalf of his son against Q.C. Construction Corporation and its agents and employes to recover for these injuries. After conferences before us the case was settled for $227,000. The insured at the time of the above described accident owned an automobile

that was insured by Government Employees Insurance Company (Uninsured Motorist carrier). The insurance policy with Government Employees Insurance Company provided for uninsured motorist coverage in the amount of $10,000 and medical payments in the amount of $5,000. Uninsured Motorist carrier does not contend that the potential value of this claim is not in excess of $10,000 even taking into consideration the amount of the settlement made with Q.C. Construction Corporation, nor is there any dispute that the medical expenses exceeded $5,000. As set forth above it was also agreed that we should decide the issues raised by the pleadings.

These issues, as we see them, are as follows:

1. Did the accident involved herein arise out of the ownership, maintenance or use of an uninsured automobile entitling the minor plaintiff to uninsured motorist and medical payments coverage?

2. Is it necessary for the hit and run automobile to actually have physical contact with the insured in order that he be entitled to uninsured motorist and medical payments coverage?

3. Does the trust agreement in the policy preclude the claimant from recovering under the uninsured motorist coverage of the policy after he has already recovered an inadequate sum from another party?

4. Has the execution of a general release prejudiced petitioner's right of recovery against the uninsured motorist, thereby precluding respondents from recovering under the uninsured motorist and medical payments provisions of the petitioner's policy?

The policy provides in Part IV thereof protection

against damages caused by an uninsured motorist and the specific policy language reads as follows:

"Coverage J—Uninsured Motorist (Damages for Bodily Injury): To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury . . . sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile . . ."

At the outset we observe that since the passage of the Uninsured Motorist Coverage Act of August 14, 1963, P.L. 909, as amended, 40 P.S. §2000, Pennsylvania courts have given a liberal construction to the statute. This is probably due to the fact that the statute sought to confer a right upon an injured plaintiff where such a right did not exist prior to the passage of the act. "It is . . . designed to insure compensation to one who is injured through the fault of another driver from whom he cannot recover damages." United Services Automobile Association Appeal, 227 Pa. Superior Ct. 508, 323 A. 2d 737 (1974).

Bearing this in mind we now address the specific issues in the case.

1. The accident arose out of the ownership, maintenance or use of such uninsured automobile.

Since coverage under the policy applies only if the accident arises "out of the ownership, maintenance or use of such uninsured automobile" it becomes important to determine the scope of this provision of the policy.

It is the contention of Uninsured Motorist carrier that this accident did not arise out of the ownership, maintenance or use of an uninsured automobile,

but rather because insured's minor son was struck by cable then being maintained and controlled by Q.C. Construction Corporation.

"Arising out of" refers to that which "originates from," "grows out of" or "flows from" the particular event under consideration: 4 Words and Phrases, "Arising out of use of automobile," 387. This term is not synonymous with "while riding" since to say that it is would read out of the contract the words "arising out of." Speziale v. Kohnke, 194 So. 2d 485, 487 (Ct. App. La. 1967). The term also does not require or justify the interpretation that the injury must be a direct and proximate result, in a strict legal sense, of the use of the automobile. Our Supreme Court stated as much in Manufacturers Casualty Ins. Comp. v. Goodville Mutual Casualty, 403 Pa. 603, 606, 170 A. 2d 571 (1961):

"In Suburban Service Bus Co. v. National Mut. Casualty Co., 183 S.W. 2d 376, 378 (St. Louis Ct. of Appeals, Mo., 1944), it was said, 'The words "arising out of the use of the bus [car]" are very broad, general, and comprehensive terms. The insurer made no attempt to limit the plain, usual, and ordinary meaning of the term "use." We find nothing in the policy requiring that the use of the bus [car] shall be the direct and proximate cause of the injury. The words "arising out of the use of the bus [car]" are much broader than words such as "directly and proximately caused by the use of the bus [car]."'

"...

"When the provisions of an insurance policy are vague or ambiguous, they must be construed strictly against the insurer and liberally in favor of the insured. Had the insurer desired to limit its

liability to accidents with such a close causal connection to the ownership, maintenance or use of the trailer [car] as to be encompassed within the scope of proximate causation, it could have and should have so stated in its policy. Construed strictly against the insurer, 'arising out of' means causally connected with, not proximately caused by. 'But for' causation, i.e., a cause and result relationship, is enough to satisfy this provision of the policy. Unquestionably the trailer [car] was in 'use' at the time of the accident, since it was being used for the very purpose of its existence, viz., to transport a horse. But for the fact of its being so used on this occasion, O'Malley's automobile would not have collided with it."

Accordingly, if direct causation was required, Uninsured Motorist carrier could have employed a phrase which clearly conveyed the idea of direct causation. We believe that the phrase "arising out of" must be interpreted in a broad and comprehensive sense to mean "originating from" or "growing out of" the use of the automobile: Manufacturers Casualty Ins. Comp., supra.

Minor plaintiff was injured immediately after the car struck the electrical cable. Had this not happened insured's minor son would not have been injured by the electrical cable. It is not necessary that these injuries be sustained while the minor was a passenger in the car or that he be actually struck by the car. It is sufficient that his injuries arose from, or were incident to and resulted from the striking of the cable by the car, as was the case here.

2. Physical Contact Requirement.

The policy defines a hit and run automobile as follows: (d) "Hit-and-run automobile means an au-

tomobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident . . ."

Petitioner submits that there was no physical contact between the "phantom automobile" and the insured and therefore the uninsured motorist coverage under Part IV of the policy involved herein is not applicable to this particular accident.

In United Services Automobile Association Appeal, 227 Pa. Superior Ct. 508, 323 A. 2d 737 (1974), the Pennsylvania Superior Court struck down such a "physical contact" requirement. Plaintiff in United Services, supra, had argued that that requirement of "physical contact" in the clause defining "hit-and-run" automobile for purposes of "uninsured motorist" coverage was more restrictive than is authorized under the Uninsured Motorist Coverage Act, supra. The court found merit in this argument saying, at 518: "The design of the statute is to protect injured persons who can prove that the accident did in fact occur and that he [sic] was injured as a proximate result of the negligence of such other motorist who cannot respond in damages for such injuries. State Farm Fire and Casualty Co. v. Lambert, 291 Ala. 645, 647, 285 So. 2d 917, 919 (1973)." Thus the court held the physical contact requirement unenforceable: "We therefore hold the physical contact requirement void and unenforceable as contrary to the Uninsured Motorist Coverage Act." p. 522.

The court also said that it was not necessary to rely on contact "so long as the claimant can prove to the satisfaction of the [court] that there was indeed another car involved." United Services, supra. Uninsured Motorist carrier here has practically con-

ceded that there was a car involved; thus insured has met the test as set out in United Services.

Furthermore, the policy provides medical payments coverage to an insured in Part II of the policy, Division 1, but the medical payment feature is only applicable if bodily injury is sustained: (a) while occupying the owned automobile, (b) while occupying a non-owned automobile . . . or (c) through being struck by an automobile or by a trailer of any type.

Petitioner contends that none of these three conditions have been met in this case since the insured's minor son was not occupying an automobile nor was he struck by an automobile. Therefore, it is argued, the insured does not meet the policy criteria for medical payments coverage and no such coverage can be afforded to him.

Since it is stipulated that the respondent in the instant case was not injured while occupying an automobile, it is clear that recovery under parts (a) and (b) of the above provision is precluded. However, in order to determine the scope of petitioner's liability under part (c) of the medical payments provision, it is necessary to examine the meaning of the term, "through being struck," as it is set forth in the policy.

In DiMartino v. State Farm Mutual Auto. Insurance Company, 201 Pa. Superior Ct. 142, 192 A. 2d 157 (1963), the Pennsylvania Superior Court, in affirming recovery of medical expenses to the plaintiff, interpreted identical language contained in a liability insurance policy as not requiring actual physical contact between the vehicle and the person of the injured. In that case the plaintiff was injured when a tractor-trailer struck a wall causing

it to collapse upon him. Recovery was allowed despite the fact that the trailer never actually touched the person of the plaintiff. In DiMartino, the insurance company contracted to pay the plaintiff's reasonable expenses incurred for bodily injury "'caused by accident, while occupying or *through being struck* by the owned automobile, or any other land motor vehicle . . .'" (Emphasis supplied.)

It is evident from the above discussion that petitioner's attempt to restrict coverage to only those injuries caused by actual physical contact with the vehicle must fail as placing too strict an interpretation upon the phrase in question under the policy. We therefore hold that no actual physical contact between the vehicle and the person of the injured is required for recovery of medical expenses under the terms of the present policy provision.

3. The Trust Agreement.

Part IV of the policy involved herein provides: "Trust Agreement: In the event of payment to any person under this Part: (a) The Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; . . ."

Uninsured Motorist carrier submits that the effect of this provision is that petitioner would be entitled to recover from the respondents any payment made to them under the uninsured motorist provision of the policy to the extent that the insured recovered any settlement or judgment from any person or organization legally responsible for the bodily injury. Uninsured Motorist carrier states

that this is just what has happened herein for, as above, the insured has recovered $227,000 in settlement from the party "legally responsible for the bodily injury."

Uninsured Motorist carrier argues further that as a result of the trust agreement, if we ordered the payment of the $10,000 uninsured motorist policy limit to the insured, this would be a "meaningless order" since the insured would then be bound under the terms of the policy to refund the $10,000 since he would have already recovered $227,000 from the Q.C. Construction Company, the party Uninsured Motorist carrier contends is "legally responsible" for the bodily injury to the insured's minor son.

We believe that concurrence with petitioner's position would be violative of public policy. In Harleysville Mutual Casualty Company v. Blumling, 429 Pa. 389, 241 A. 2d 112 (1968), the court said: "The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute but nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist." p. 395. We think that the instruction of Blumling, supra, is that, as a matter of statutory policy, Uninsured Motorist carrier may not reduce or dilute the payments that are available to its insured under the uninsured motorist protection of the policy. Thus a fair interpretation of the trust agreement, in light of statutory policy, must be that a settlement with or judgment against only an uninsured motorist brings into play the provisions of the trust agreement.

The validity of such a trust agreement has never been determined by the courts of this Commonwealth; however other states have done so. In

Michigan Mutual Liability Company v. Karsten, 13 Mich. App. 46, 163 N.W. 2d 670 (1968), defendant settled with one of two tortfeasors without the consent of his insurance company. His insurance policy contained a clause excluding uninsured motorist coverage to those who have settled their cases without consent of the insurance company. The Michigan appellate court adopted the trial court's ruling when it ruled in favor of the insured. The trial court in its interpretation of the exclusionary clause said:

"The language of the policy is clear and unambiguous and the exclusion clause can only mean that the settlement forbidden in this case . . . is one made by the insured with a person legally liable for injuries caused by an accident arising out of the ownership, maintenance or use of the *uninsured* vehicle. This means that the exclusion clause does not prohibit a settlement with a joint tortfeasor liable for injuries arising out of the ownership, maintenance or use of his own *insured* vehicle. . . . It is therefore submitted that the exclusionary clause . . . applies only to settlements made with the owner or operator or other person who might be legally responsible for the actions of such owner or operator of the uninsured vehicle *and does not refer to a settlement with the owner or operator of an insured vehicle involved in the same accident.*" 13 Mich. App. at 49-50, 163 N.W. 2d at 671-72. (Emphasis supplied.)

The situation involved herein is "on all fours" with the situation in Karsten, supra. The recovery in this case was made from a tortfeasor for its acts of negligence. There was no settlement between the respondents and the uninsured motorist. The Q.C. Construction Corporation did not pay on be-

half of the uninsured motorist; its "legal responsibility" was never litigated or determined. The policy in question does not purport to include in its trust agreement payments by parties which are *not determined* to be "legally responsible" or payments made by parties who *may* be "legally responsible." If Uninsured Motorist carrier wished to include *all* payments made in consideration of the accident in question, it could have done so. What the carrier has done is to make a class of payments trigger the operation of its trust agreement, which class does not include all payments but only some. This, petitioner cannot do; the trust agreement in the instant situation cannot be used to exclude uninsured motorist coverage; thus it is void and unenforceable.

4. Execution of the Release.

Uninsured Motorist carrier submits that in the underlying case of Amabile v. Q.C. Construction Corporation, respondents executed a general release as opposed to a joint tortfeasor release. As a result of that general release, it is argued that Uninsured Motorist carrier can no longer hold the "uninsured motorist" legally liable because if he sued him now, he could raise the general release as an absolute bar. Coverage J only required petitioner "to pay all sums which the insured 'shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile.'" Since the Uninsured Motorist carrier is now precluded from any recovery against said motorist in view of insured's execution of a general release, Uninsured Motorist carrier asserts there can be no recovery under the uninsured motorist provisions of the policy.

In addition, Uninsured Motorist carrier contends the insured has breached policy subsections (b) and (c) of the trust agreement in Part IV, which reads as follows:

"(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this part; (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights . . ." By executing a general release, Uninsured Motorist carrier says its right of recovery against the uninsured motorist and indeed the Q.C. Construction Corporation are now prejudiced.

We cannot agree with the Uninsured Motorist carrier's position. As stated before, the act, supra, does not place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist: Blumling, supra.

The design of our statute is to protect an insured against the hazard presented by an injury inflicted in an accident with an irresponsible operator who is uninsured or has fled the scene, leaving the insured without recourse for the damage inflicted. This court must construe the policy and the statutory provision to achieve the primary purpose of the enactment.

The policy binds the insurer to pay the insured whatever sums he is "legally entitled" to recover from the uninsured motorist. Since the thrust of the statute is that the insurance proceeds are paid by the carrier acting in the stead of the uninsured

motorist, the proceeds do not exist merely as a last resort available to the insured only after they have tried and failed to recover their damages from all other sources: Rhault v. Tsagarakos, 361 F. Supp. 202 (D. Vermont 1973).

Neither the statute nor the policy is designed for the benefit of the uninsured motorist. Their purpose is to provide the insured with a source of recovery of damages caused by an uninsured motorist. It is in the nature of a limited type of accident insurance rather than the usual indemnity contract: Rhodes v. Automotive Ignition Co., 218 Pa. Superior Ct. 281, 275 A. 2d 846 (1971). Thus payment by the insurer under the terms of the uninsured motorist provisions is not subject to the subrogation rights that a compensation carrier would normally have if the driver of the automobile causing the injury had the common form of liability insurance: Jones v. State Farm Mutual Auto. Ins. Co., 41 D. & C. 2d 337 (1966).

If Uninsured Motorist carrier's liability was reduced by the amount of the settlement, the coverage afforded the insured would be reduced to zero. This interpretation of the policy would result in a direct reduction in coverage below the statutory minimum.

Uninsured Motorist carrier seeks to prevent insured's recovery by relying on the exclusionary clause heretofore mentioned on the ground mainly that its subrogation rights will be abrogated. The validation of such a policy would make a hollow shell of our uninsured motorist statute in such a situation as is now before us and cannot be permitted.

Our ruling is consistent with that of the appellate court of Mississippi.

In Harthcock v. State Farm Mutual Auto. Ins. Co., 248 So. 2d 456, 459-60 (Miss. 1971), the court stated:

". . . Insofar as this exclusion applies to a tort-feasor other than the uninsured motorist, this provision is invalid. The insurer may not cut down on the coverage the statute requires. The statute intends to provide a source for the collection by the insured of all sums which he shall be legally entitled to recover as damages against the owner or operator of an uninsured motor vehicle. The coverage afforded by these policies is mandatory under the statute and may not be cut down by a policy exclusion. The construction placed on this provision by State Farm and Universal renders the uninsured motorists coverage conditional in that it does not apply unless the insured surrenders the right to settle with another tort-feasor. This exclusion, when applied to tort-feasors other than the uninsured motorist, is an invalid abridgement of the coverage required by the statute, and is void."

The Court of Civil Appeals of Alabama, in Alabama Farm Bureau Mutual Casualty Ins. Co. v. Clem, 49 Ala. App. 457, 460-462, 273 So. 2d 218, 222 (1973), cited with approval the aforementioned quotation from Harthcock, supra, and stated:

". . . We agree with the conclusion of the trial court that appellant is attempting to make the uninsured motorist coverage conditional on the insured's surrendering his right to settle with an insured tort-feasor, and thereby limiting its liability under such coverage . . .

". . .We therefore conclude that the exclusionary clause in question does not prevent a settlement with an insured tort-feasor under the circum-

stances of this case . . ." See also Mich. Mutual Liability Company v. Karsten, supra.

In the instant case the uninsured motorist is unknown and will never be sued. Neither insured nor anyone else will ever bring an action against the hit and run driver. One who is injured by an uninsured motorist should be able, in accordance with the statutory mandate and legislative intent, to recover the maximum possible up to the full amount of his loss. The position taken by the Uninsured Motorist carrier would allow the insured to pursue an uninsured motorist claim first and then to maintain an action against another party, but not to do the converse. This position would diminish an already inadequate recovery and would simply mean that premiums were paid for insurance for which the benefits were not forthcoming. By Uninsured Motorist carrier's reasoning once any party is released, no action could be brought against an uninsured motorist and therefore no uninsured motorist claim pursuant to the contract of insurance could be brought.

Uninsured Motorist carrier should not be allowed and will not be allowed to insert a clause in its contract of insurance that frustrates the purpose of the Uninsured Motorist Coverage Act, supra, and to prevent insured from recovering those benefits which he is legally entitled to recover. To the extent that the policy language provided by Uninsured Motorist carrier designates the right of the insured to be fully compensated before the insurer is subrogated, we hold that such language is repugnant to the act: DeSantis v. Am. Mutual Lia. Ins. Co., 53 D. & C. 2d 595 (1971).

We therefore direct Uninsured Motorist carrier to pay to insured $10,000 under the uninsured

motorist coverage and $5,000 under the medical payments coverage and enter an order accordingly.

## ORDER

And now, November 28, 1978, the case having been submitted to us by agreement on petition for declaratory judgment and answer thereto, it is hereby ordered that petitioner, Government Employees Insurance Company, shall pay to respondents the sum of $10,000 representing the uninsured motorist coverage under its policy and the sum of $5,000 representing the medical payments coverage under its policy, in accordance with the accompanying memorandum opinion.