**Denise K. WILLIAMS, Administratrix of the Estate of Kim George Williams; and Denise K. Williams, Individually and as Surviving Spouse of Kim George Williams and Guardian of the Child of Kim George Williams, Plaintiff,**

v.

**NATIONWIDE INSURANCE COMPANY; Nationwide Mutual Insurance Company; and Nationwide Life Insurance Company, Defendants.**

Civ. A. No. 82–0526.

United States District Court,
M.D. Pennsylvania.

Sept. 19, 1983.

Joseph P. Green, Lee G. Nollau, Bellefonte, Pa., for plaintiff.

J. Michael Williamson, Lock Haven, Pa., for defendants.

## MEMORANDUM

HERMAN, District Judge.

Presently before this court is Plaintiff's motion for summary judgment. The underlying cause of action involves Plaintiff's attempts to recover insurance benefits under automobile and life insurance policies issued by Defendants. Defendants refuse to make any payments under the policies claiming that the decedent, Kim George Williams, committed suicide.

## I. FACTUAL DISCUSSION

The undisputed facts establish that Kim George Williams and Denise K. Williams, husband and wife, purchased an automobile policy from Nationwide Mutual Insurance Company[1] in August 1974. The Williams purchased this policy through the company's agent, Roy Dunklebarger. On page eight of the automobile policy, ten "coverage exclusions" are listed. The sixth exclusion states the following: "We will not pay any benefits to anyone who intentionally injures himself or anyone else, nor will we pay Survivor's Loss benefits to his survivors." Exhibit A in Support of Plaintiff's Affidavit.

The undisputed affidavit of Plaintiff reveals that neither Plaintiff or her husband ever read the automobile policy. Plaintiff's Affidavit, ¶ 10. Neither spouse had any special knowledge or expertise in insurance matters; therefore, they relied upon the statements and representations of Dunklebarger. *Id.,* ¶¶ 10, 11. Nationwide has admitted that it did not explain the "intentional injury/suicide" exclusion to the Williams, nor did Dunklebarger determine whether the Williams understood this exclusion. Nationwide's Response to Admissions, ¶¶ 6, 8.

Similarly, in January 1979 the Williams purchased a life insurance policy from Nationwide Life Insurance Company through its agent, Dunklebarger. The insurance policy covered each spouse. Under the general provisions in this policy was the following statement: "Suicide—If within two years from the policy date the Insured [Kim Williams] dies as a result of suicide, whether sane or insane, the liability of the Company shall be limited to the amount of premiums paid without interest." Exhibit B in Support of Plaintiff's Affidavit.

1. For the purposes of this memorandum, the above-captioned Defendants are hereinafter referred to as Nationwide.

The uncontested affidavit of Plaintiff reveals that neither spouse read this insurance policy. Plaintiff's Affidavit, ¶ 10. Dunklebarger testified that he had not discussed the suicide clause with the Williams. Dunklebarger Deposition, at 16. Nationwide admitted that it had not explained the existence or effect of the suicide limitation to the Williams, nor had its agent determined whether either spouse had understood the limitation. Nationwide's Response to Admissions, ¶¶ 2, 4.

On September 9, 1980, Kim George Williams was involved in a fatal, single-vehicle automobile accident. Plaintiff sought payment from Nationwide under the automobile and life insurance policies. Nationwide refused to make any payments, claiming that the decedent had committed suicide. Plaintiff argues that the suicide exclusions contained in the policies cannot be enforced pursuant to Pennsylvania law as set forth in *Hionis v. Northern Mutual Insurance Company,* 230 Pa.Super.Ct. 511, 327 A.2d 363 (1974).

## II. LEGAL PRINCIPLES

Because this court has jurisdiction of this action on the basis of diversity of citizenship, Pennsylvania substantive law applies. *See Daburlos v. Commercial Insurance Company of Newark, N.J.,* 521 F.2d 18, 20 & n. 2 (3d Cir.1975). HIONIS represents the law in Pennsylvania concerning exclusions in insurance policies. *Id.; Brokers Title Co. v. St. Paul Fire & Marine Insurance Co.,* 610 F.2d 1174, 1182–83 (3d Cir. 1979) (Garth, dissenting).

In *Hionis,* the Pennsylvania Superior Court stated the following:

When a defense is based on an exception or exclusion in a policy, our Supreme Court has held that such a defense is an affirmative one, and the burden is upon the defendant to establish it. *Weissman v. Prashker,* 405 Pa. 226, 233, 175 A.2d 63

(1961). Even where a policy is written in unambiguous terms, the burden of establishing the applicability of an exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him. (Citations omitted).

*Hionis,* 230 Pa.Super.Ct. at 517, 327 A.2d at 365. Although the Pennsylvania Supreme Court has not addressed this issue, the Pennsylvania Superior Court has consistently applied the HIONIS principle. *O'Malley v. Continental Insurance Company,* 305 Pa. Super.Ct. 302, 451 A.2d 542 (1982) (finding the *Hionis* burden satisfied); *Kelmo Enterprises v. Commercial Union Insurance Company,* 285 Pa.Super.Ct. 13, 426 A.2d 680 (1981); *Klischer v. Nationwide Life Insurance Company,* 281 Pa.Super.Ct. 292, 422 A.2d 175 (1980).[2] Indeed, the Pennsylvania Superior Court reaffirmed its position in *Kelmo Enterprises* stating:

Whether the policy is clear and precise or whether it is oblique and ambiguous, the disparity between the parties remains the same .... Insurers are not unduly burdened by a requirement that they explain the exclusions of their policies to insureds so that the insured can make an informed decision either to assume the excluded risks or to obtain additional insurance to protect against them.

*Kelmo Enterprises,* 285 Pa.Super.Ct. at 19, 426 A.2d at 683 (emphasis added), *quoting, Klischer,* 281 Pa.Super.Ct. at 299, 422 A.2d at 178.

### A. The Life Insurance Policy's Exclusion

Applying this principle to the life insurance policy purchased by the Williams, it is clear that Nationwide cannot establish that "the insured was aware of the [suicide] exclusion or limitation and that the effect thereof was explained to him." *Hionis,* 230 Pa.Super.Ct. at 517, 327 A.2d at 365. Na-

---

**2.** Two exceptions have developed to the *Hionis* rule, neither of which are applicable in the case *sub judice.* The Third Circuit has held that *Hionis* should not be applied when the parties have relatively equal bargaining power. *Brokers Title Co.,* 610 F.2d at 1179–80. A second exception is where the limiting language, in essence, describes part of the coverage. *Miller v. Prudential Insurance Company,* 239 Pa.Super.Ct. 467, 362 A.2d 1017 (1976) (insured seeking major medical policy to expand his current health protection).

tionwide has admitted that it did not explain the existence and effect of the suicide limitation to Kim and Denise Williams, nor did its agent determine whether either individual understood the limitation. Nationwide's Responses to Admissions, ¶¶ 2, 4. Plaintiff has alleged that neither she or her husband read the policy or were aware of the suicide limitation. Plaintiff's Affidavit, ¶¶ 10, 13–14. Moreover, Nationwide admits that neither Plaintiff or decedent were of equal bargaining power with Nationwide. Nationwide's Brief in Opposition to Summary Judgment, at 1.

Nationwide argues, however, that *Hionis* should not apply in this case. Nationwide's rationale is that "the knowledge of the existence of a "suicide" exclusion clause should be imputed to Plaintiff and Plaintiff's decedent on the theory that the existence of suicide clauses is a matter of general public knowledge." *Id.*, at 3. In support thereof, Nationwide cites *Miller v. Prudential Insurance Company*, 239 Pa.Super.Ct. 467, 362 A.2d 1017 (1976), where the court imputed the insured's knowledge of certain limiting language.

*Miller* is distinguishable from the present case. In *Miller,* the insured had purchased a "major medical" expense policy to expand his basic medical coverage under his Blue Cross and Blue Shield policy. The major medical policy provided an *exception* to payment if the insured was reimbursed from other medical insurance policies. The nature of the policy was to expand medical coverage, not to duplicate it. *Id.* at 473–74, 362 A.2d at 1121. In this case, no facts support Nationwide's position that Plaintiff did not intend to purchase a policy that would pay benefits even if her husband committed suicide. The existence of a sui-

cide exclusion clause, which prevents *any* recovery of benefits, cannot be compared to a medical insurance policy that prevents *duplicative* benefits.

More importantly, we agree with Plaintiff that the existence and effect of suicide exclusions in life insurance policies are not matters of general public knowledge. As Plaintiff aptly notes, Nationwide would have paid benefits, regardless if the death was suicide, if two years had passed since the purchase of the policy.[3] It cannot be stated as a matter of public knowledge that suicide exclusions exist in all insurance policies or that such exclusions, if they do exist, have a set period of two years of applicability.[4]

■ Therefore, we find that Nationwide cannot satisfy its burden that Plaintiff and the decedent were aware of the suicide exclusion and understood its effect. Nationwide, thus, may not assert the suicide exclusion or limitation in defense of Plaintiff's claim for life insurance benefits.

*B. The Automobile Insurance Policy's Exclusion*

Turning to Plaintiff's claim for no-fault motor vehicle benefits, Plaintiff relies upon the HIONIS principle and the fact that she and her husband were unaware of the suicide limitation in their automobile insurance policy. While the same reasoning applies with respect to an exclusionary clause in an automobile policy as compared to a life insurance policy, in this case Plaintiff seeks to obtain payments pursuant to provisions of the Pennsylvania No-fault Motor Vehicle Insurance Act [hereinafter No-fault Act], 40 P.S. §§ 1009.101–1009.701 (Purdon's Pkt. Pt. 1983–1984). Under the No-fault Act,

---

**3.** The applicable exclusion provided, "If *within two years* from the policy date the Insured dies as a result of suicide, whether sane or insane, the liability of the Company shall be limited to the amount of premiums paid without interest." Exhibit B in Support of Plaintiff's Affidavit (emphasis added).

**4.** We find the facts in *Kelmo Enterprises, Inc. v. Commercial Union Insurance Company,* 285 Pa.Superior Ct. 13, 426 A.2d 680 (1981), similar on this issue. In *Kelmo,* the insured purchased

liability insurance for damages occurring through the operation of his tavern. An exclusion existed in the policy that denied coverage if the damages arose from an illegal sale of alcohol to a minor. The court did not impute knowledge to the insured, as a matter of general public knowledge, that an illegal sale of alcohol would exclude coverage. Rather, the court examined whether the insured *actually was aware of and understood the exclusion.*

Nationwide contends that the Pennsylvania legislature's intent to cover *accidentally* sustained bodily harm prohibits application of the *Hionis* decision to Nationwide's automobile insurance policy. *See* 40 P.S. § 1009.103.

In other words, the issue before us is whether the No-fault Act sets forth a statutory exclusion with respect to intentional injuries that nullifies the *Hionis* rule as to an automobile insurance policy. Apparently, this is an issue of first impression. Neither party has presented any authority on this point, nor have we discovered any cases discussing this issue.

The declared purpose of the No-fault Act is to provide prompt compensation to victims of motor vehicle accidents while providing a low cost insurance system. *Kirsch v. Nationwide Insurance Company,* 532 F.Supp. 766, 768–70 (W.D.Pa.1982); 40 P.S. § 1009.102(b). The Act defines "victim" as any "individual who suffers injury arising out of the maintenance or use of a motor vehicle." 40 P.S. § 1009.103. " 'Injury' means *accidentally* sustained bodily harm to an individual and that individual's illness, disease, or death resulting therefrom." *Id.* (emphasis added). From a simple reading of the language in the No-fault Act, we believe the Act does create a statutory exclusion of coverage for *intentionally* inflicted injuries.

■ Under the facts of this case, Plaintiff seeks to obtain benefits under the Nationwide automobile policy as that policy is governed by provisions in the No-fault Act. Because the No-fault Act applies to accidentally incurred injuries, and not intentional injuries, Nationwide's suicide exclusion is valid and is not affected by the *Hionis* rule. Accordingly, Nationwide is permitted to assert this exclusionary clause in defense of Plaintiff's claim for no-fault insurance benefits. Whether decedent's death was intentionally inflicted, however, is a question of fact for the jury.

## III. "STACKING" NO–FAULT BENEFITS

If Nationwide fails to prove that the decedent committed suicide, Plaintiff contends that she is entitled to twice the amount of no-fault benefits. Plaintiff and her husband had insured two vehicles under one Nationwide automobile policy, paying separate premiums for each vehicle. Plaintiff therefore asserts that she is entitled to accumulate or "stack" the no-fault benefits for each vehicle.

No Pennsylvania appellate authority exists on this issue. A number of lower courts have addressed this precise issue, however, resulting in numerous divergent opinions. *Compare, e.g., Wilson v. Keystone Insurance Company,* 7 Phila.Co.Rep. 274 (1981); *Brendlinger v. Allstate Insurance Company,* 64 Westmoreland L.J. 67 (1981), *with, Pontious v. United States Fidelity and Guaranty Company,* 102 Dauphin Co.Rep. 432 (1981); *Kirsch v. Nationwide Insurance Company,* 532 F.Supp. 766 (W.D. Pa.1982). An excellent analysis of these cases and their reasoning is presented by Judge Patrick J. Toole in *Manghillis v. Allstate Insurance Company,* Civil Action No. 937–C1982 (Luzerne County Ct., filed January 4, 1983).

■ Upon our review of the various cases, we agree with the reasoning of the *Pontious* and *Kirsch* courts and find that stacking is not permitted under the No-fault Act. First, we are not persuaded by the fact that the Pennsylvania Supreme Court has permitted stacking under the Uninsured Motorist Act, 40 P.S. § 2000 (Purdon's 1971). *Harleysville Mutual Casualty Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968). The purpose of the Uninsured Motorist Act is different from the purpose of the No-fault Act.

In *Harleysville,* the Pennsylvania Supreme Court observed the following:

The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but *nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may*

recover if he suffers a loss resulting from the negligence of an uninsured motorist.

Id. at 395, 241 A.2d at 115 (emphasis added). The purpose of the No-fault Act, to the contrary, is to "assure every victim ... recovery of a *reasonable amount* of work loss, replacement services and survivor's loss ... [under] a *low cost,* comprehensive *and fair system....*" 40 P.S. § 1009.-102(a)(6) & (7) (emphasis added). The No-fault Act thus places specific ceilings on these types of recovery. *Id.; Kirsch,* 532 F.Supp. at 769–70.[5]

The issue before us is difficult. The insurance companies and the injured insureds have presented cogent arguments to support their conflicting positions. Unfortunately, no Pennsylvania appellate authority exists to guide this court through these muddied waters. Nevertheless, it is this court's opinion that the Pennsylvania legislature did not intend stacking of no-fault benefits merely because an individual pays a separate premium for each insured vehicle. It seems inequitable that a multi-car household could recover double or triple no-fault benefits for a *single* injury solely because two or three cars are insured by the household. Absent clear legislative intent to the contrary, we do not believe the Pennsylvania Supreme Court would permit stacking under the No-fault Act.

An appropriate order will be entered.

---

**5.** In *Pontious v. United States Fidelity and Guaranty Company,* 102 Dauphin Co.Rep. 432, 436 (1981), Judge Morgan made a similar finding:

> The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers and a liberal construction of the statute was perceived as appropriate to achieve this legislative intent. *Harleysville M. Cas. Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1969). Put another way, stacking of uninsured motorist coverage rests on the practical assumption that if the owner of an automobile doesn't have insurance on it, he probably doesn't have anything else either. Although the No-Fault Act declares essential the maximum feasible restoration of injured individuals and compensation of economic losses, it also emphatically states and reiterates the need for and its own purported design of a low-cost insurance system.