469 A.2d 1025

**Mary R. TUCCI, Appellee,**

v.

**STATE FARM INSURANCE COMPANY, Appellant.**

**Arlene Anne CARR, Appellee,**

v.

**STATE FARM INSURANCE COMPANY, Appellant.**

**Barbara SAUNDERS, Appellee,**

v.

**STATE FARM INSURANCE COMPANY, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1983.

Decided Dec. 27, 1983.

Reargument Denied Feb. 23, 1984.

448

Alan Dion, Philadelphia, for appellant.

Samuel Merovitz, Donald J. Klein, Philadelphia, for Tucci at No. 35.

Bernard M. Gross, Philadelphia, for Carr at No. 39.

Phillip Baer, Philadelphia, for Saunders at No. 41.

Richard C. Angino, Harrisburg, for Saunders and amicus.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

These three cases in which State Farm Mutual Automobile Insurance Company (State Farm) appeals by allowance involve the same issue and arise out of arbitration awards under no-fault policies. Therefore, we have consolidated them.

The awards were all made by the same arbitrator, confirmed by Philadelphia Common Pleas and affirmed by the

same panel of Superior Court. The issue in each is whether an insured can doubly recover the same economic losses, or "special damages", under the personal injury protection provisions of a no-fault policy and also under the uninsured motorist coverage required in all liability policies by the Act of August 14, 1963, P.L. 909, 40 P.S. § 2000.[1] We hold the legislature did not intend to afford such duplicate recovery beyond the actual special damages an insured suffered and, therefore, reverse Superior Court.

Each of these appellees received payment of her claim for economic loss or "special damages", i.e. medical expenses and loss of earnings, under the basic loss coverage of her no-fault insurance. Each of them then claimed additional damages under the uninsured motorist coverage of her liability policy. These claims were submitted to the arbitrator who made the following awards:

(1) for Mary R. Tucci against State Farm in the amount of $12,500.00,

(2) for Arlene Carr against State Farm in the amount of $25,500.00,[2]

(3) for Barbara Saunders against State Farm in the amount of $9,987.00.

Each award specified the portion of the amount awarded attributable to noneconomic loss or "general damages", i.e. pain and suffering, which would be recoverable in trespass under Section 301 of our No-Fault Act[3] and the portion attributable to "special damages" which latter was, in each case, identical with the amounts received under the appel-

1. This Act refers to Section 1421 of Article XIV of "The Vehicle Code", Act of April 29, 1959 (P.L. 58) to establish the minimum insurance coverage required. With the enactment of a new Vehicle Code in 1974, this provision was eliminated and minimum coverage is now promulgated in departmental regulations. *See* 31 Pa.Code § 66.11.

2. Arlene Carr was covered by two policies issued by State Farm. Each of the other appellees was covered by one such policy.

3. Act of July 19, 1974, P.L. 489, No. 176, effective July 19, 1975, 40 P.S. §§ 1009.301(1).

lees' no-fault coverage for basic loss.[4] Appellant petitioned the Philadelphia Court of Common Pleas for modification of the arbitrator's awards under the Act of April 25, 1927, P.L. 381, No. 248, 5 P.S. § 161–179, on the ground that the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.[5] With the judiciary's scope of review so defined, we now reexamine these awards.

The Act of August 14, 1963, P.L. 909, 40 P.S. § 2000, was enacted to require, with limitations, "that insurance policies insuring against loss occurring in connection with motor vehicles provide protection against certain uninsured motorists."[6] Relevant to our discussion here is subsection (a) which provides:

(a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle

4. In *Martin v. Soblotney*, 502 Pa. 418, 466 A.2d 1022 (1983), we held that evidence of the cost of medical services is irrelevant and, therefore, inadmissible to establish general damages or noneconomic detriment in trespass.

5. This act was replaced by Chapter 73 (Uniform Arbitration Act) of the Judicial Code effective December 4, 1982. 5 P.S. § 171 provided:
   In either [sic] of the following cases the court shall make an order modifying or correcting the award upon the application of any party to the arbitration:
   (a) Where there was an evident material miscalculation of figures, or an evident material mistake in the description of any person, thing, or property referred to in the award.
   (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matters submitted.
   (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
   (d) Where the award is against the law, and is such that had it been a verdict of the jury the court would have entered different or other judgment notwithstanding the verdict.
   The court may modify and correct the award or resubmit the matter to the arbitrators.

6. This act was not formally titled but is usually referred to as the "uninsured motorists act". We will so style it here.

shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of "The Vehicle Code," act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, . . . .

40 P.S. § 2000(a).

In *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968), we interpreted this act as follows:

The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by the statute, but nowhere, explicitly or implicitly, does the act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist.

In *Pattani v. Keystone Ins. Co.*, 426 Pa. 332, 231 A.2d 402 (1967), we quoted with approval the language of *Katz v. American Motorists Ins. Co.* [244 Cal.App.2d 886], 53 Cal.Rptr. 669 (1966), that such statutes are "designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injuries through the negligent use of those highways by others." We there declared for liberal construction of the statute in order to achieve the legislative intent, and we here adhere to that declaration.

*Id.*, 429 Pa. at 395, 241 A.2d at 115.

■ Eleven years after the passage of the uninsured motorists act, the legislature attempted to establish "a

Statewide low-cost, comprehensive, and fair system of compensating and restoring motor vehicle accident victims and the survivors of deceased victims" [7] intending to avoid the "confusion, complexity, uncertainty, and chaos which would be engendered by a multiplicity of noncomplementary systems." [8] This effort was entitled the "Pennsylvania No-Fault Motor Vehicle Insurance Act." There is no direct reference in that No-Fault Act to the 1963 "uninsured motorists act", despite the fact that the No-Fault Act has provisions which directly apply to uninsured motor vehicle owners.[9] Based on the absence of explicit cross-reference, appellees argue that the 1974 No-Fault Act does not "supersede or even interrelate" with the prior act and, therefore, they can doubly recover medical and work loss expenses under both acts. We note, however, that both these statutes relate to losses from injuries occurring in connection with motor vehicles and the obligations of motor vehicle owners to obtain insurance protection against accidental injuries, especially those caused by uninsured motorists. Logically, therefore, we should, if possible, read them *in pari materia* since they relate to the same class of persons or things and, under general rules of statutory construction, are to be construed together, if possible, as one statute. 1 Pa.C.S. § 1932.[10]

Hence, we are bound to assume that when the legislature indicated its intention to set up "a Statewide low-cost, comprehensive, and fair system of compensating

7. 40 P.S. § 1009.102(a)(4).

8. 40 P.S. § 1009.102(a)(8).

9. The term "uninsured motorists" is found in the title to Article V and the caption to Section 501. Section 501 sets forth a victim's insurer's right to recover from an uninsured owner or registrant. Sections 104, 301 and 601 each address some aspect of an owner's failure to purchase statutorily mandated insurance in no-fault terminology.

10. In matters of legislative interpretation, the prime function of the Court is to make sense out of apparent statutory inconsistencies arising out of the different factual or chronological background of individual enactments.

and restoring motor vehicle accident victims and the survivors of deceased victims", specifically addressing certain aspects of the injuries caused by uninsured motorists and leaving the earlier uninsured motorist legislation intact, it intended that earlier legislation to become a rational part of the new comprehensive system. Thus, the new act should be viewed as complementing the earlier policy of requiring all motorists to carry liability protection and protection against personal injury losses caused by uninsured motorists.

■ Section 102(b) of the No-Fault Act, states its purpose "to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims...." Under the definitions in Section 103, "loss" means "accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss." "Basic loss benefits" are defined as "benefits provided in accordance with *this act* for the net loss sustained by a victim...." (Emphasis added.) If we then substitute the Section 103 definitions into Section 102(b), the latter section sets forth a purpose to establish a statewide system of prompt and adequate benefits for the net economic detriment sustained by a motor accident victim.

The correlation between this purpose of the No-Fault Act and that of the Uninsured Motorist Act has been perceptively articulated by Judge Teitelbaum in *Carnevale v. Sentry Insurance, A Mutual Company*, 469 F.Supp. 681 (W.D.Pa. 1979):

> The purpose of Pennsylvania's no-fault law is to create a first party contractual right of action against one's own insurer for economic loss and to preserve the common law cause of action for non-economic loss where certain threshold conditions have been met.[1] Uninsured motorist coverage is designed to provide protection against being

left with a worthless cause of action against the uninsured driver for non-economic loss.[2]

Absent the set-off provision, plaintiff is reimbursed for his economic losses under the no-fault coverage and reimbursed for his non-economic losses up to the policy limit by the uninsured motorist coverage. In this manner, the legislatively intended distinction between economic and non-economic losses is preserved. Public policy is also furthered in that premiums paid for uninsured motorist coverage will provide protection against non-economic losses occasioned by an uninsured motorist's actions.

---

[1] . . . .

[2] There could be no other purpose since economic losses are paid by one's own insurer without regard to whether or not the other driver is insured.

469 F.Supp. at 682.

The rationale of *Tubner v. State Farm Mutual Auto Insurance Co.*, 496 Pa. 215, 436 A.2d 621 (1981) broadly supports correlation between the two acts. In *Tubner*, a majority of this Court held that a person entitled to basic loss benefits under the No-Fault Act's assigned claims plan was also entitled to recovery under the uninsured motorists act for general (noneconomic) damages not recoverable under no-fault (basic loss) protection. *See* especially the majority's footnote 13, 496 Pa. at 220, 436 A.2d at 623 citing *Carnevale* with approval. *See also Brader v. Nationwide Mutual Insurance Co.*, 270 Pa.Superior Ct. 258, 411 A.2d 516 (1979), similarly cited with approval in *Tubner* in footnote 13. In *Brader*, the Superior Court said: "In such situations the insured should be allowed to recover under the uninsured motorists provisions of his insurance policies (up to the policy limits) those actual damages suffered which exceed the amount of no-fault benefits received or owing." 270 Pa.Superior Ct. at 265, 411 A.2d at 519.

■ Hence, *Tubner* is not inconsistent with our conclusion here that these uninsured motorists provisions do not

provide double recovery of economic benefit. Moreover, the dissenters in *Tubner* also cite *Carnevale* and *Brader* with approval in their footnote 2, 496 Pa. at 224, 436 A.2d at 625. Their conclusion that the No-Fault Act did not confer uninsured motorists benefits where no uninsured motorist policy has been issued is also consonant with the result here.

In *Carnevale* the court refused to enforce a set-off provision in the plaintiff's no-fault policy which would have permitted the deduction of $48,000.00 in no-fault payments for hospital and medical treatment from the $15,000.00 uninsured motorist coverage for noneconomic loss. Allowing such set-off would have effectively denied the minor plaintiff any recovery for pain and suffering. Judge Teitelbaum's analysis seems to us in accord with both common sense and the provisions of the two substantive acts we here interpret, as well as those of our Statutory Construction Act. It creates out of the two acts a coherent and comprehensive system of compensating and restoring motor vehicle accident victims.

■ The instant three appeals present the simple obverse of *Carnevale*. Here instead of setting off no-fault economic losses against uninsured motorists noneconomic losses, the arbitrators have awarded the same economic losses for a second time. Such a result would equally frustrate the legislative intent expressed in the No-Fault Act. Moreover, it is contrary to the policy we articulated in *Harleysville Mutual Casualty Co. v. Blumling, supra,* where we said:

> We do not wish to imply that injured parties may be permitted to pyramid separate coverages so as to recover more than the actual loss. Such a ruling is not necessary to the decision of this case and we do not make it. We do hold, however, as did the court in *Sellers, supra, [Sellers v. U.S.F. & G. Co.,* 185 So.2d 689 (Fla.1966) ] that where the loss exceeds the limits of one policy, the insured may proceed under other available policies up to their individual limits or to the amount of the actual loss.

429 Pa. at 395–396, 241 A.2d at 115. More recently, in *State Farm Mutual Auto Insurance Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978), we held:

The insured may recover uninsured motorists benefits:

1. If the injured party paid the premiums of the policy and was the named insured; and

2. If the recovery under the second uninsured motorist coverage was limited to actual damages; and

3. If the recovery is not limited by the statutory exclusions.

*Id.*, 481 Pa. at 143, 392 A.2d at 287. In both of these cases, we permitted the insured to recover uninsured motorists benefits under more than one uninsured motorist coverage "[i]f the recovery under the second uninsured motorist coverage was limited to actual damages." *Id.* Because the arbitrator explicitly awarded damages for economic detriment already compensated by appellees' basic loss coverage under no-fault, we now hold those portions of his awards to be against the law. The order of Superior Court, 297 Pa.Super. 593, 441 A.2d 790, is vacated and the record remanded to Philadelphia Common Pleas for further proceedings consistent with this opinion.

NIX, J., concurs in the result.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent and would affirm based upon the opinions of the Superior Court. *See Saunders v. State Farm Insurance Company*, 294 Pa.Super. 424, 440 A.2d 538 (1982) (opinion by Cavanaugh, J.); *Tucci v. State Farm Insurance Company*, 297 Pa.Super. 593, 441 A.2d 790 (1982) (memorandum opinion); *Carr v. State Farm Insurance Company*, 297 Pa.Super. 576, 441 A.2d 781 (1982) (memorandum opinion).