477 A.2d 515

**Patricia STEPPLING**

v.

**PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1984.

Filed May 18, 1984.

Reargument Denied July 18, 1984.

Petition for Allowance of Appeal Denied Nov. 29, 1984.

420

Joseph J. May, Erie, for appellant.

Girard N. Evashavik, Pittsburgh, for appellee.

Before BROSKY, OLSZEWSKI and JOHNSON, JJ.

JOHNSON, Judge:

This appeal presents an issue of first impression under the Pennsylvania No-fault Motor Vehicle Insurance Act.[1] We must decide whether Section 203 of the Act,[2] when read in conjunction with Section 106 of the Act,[3] permits an insured to recover under the statute for hospital expenses which have been paid previously, on behalf of the insured, by a private Blue Cross plan for collateral coverage. Subsumed under this general issue is the need to determine whether interest must be assessed on the delayed payment of no-fault benefits if found to be due, and whether the facts of this case support the award of attorney's fees.

The trial court received the case upon a stipulation of facts and oral cross-motions for summary judgment. On April 23, 1982, the court filed its opinion and entered its order awarding basic loss benefits to Patricia L. Steppling (Claimant), together with 18% interest as provided in Section 106(a)(2) of the Act, and attorney's fees. From the entry of judgment on the award, Pennsylvania Manufacturers' Association Insurance Company (PMA) brings this appeal. We hold that so-called "double recovery" is allowed, that the award of interest and attorney's fees was proper and, accordingly, we affirm.

## I.

The stipulated facts disclose that Claimant was an insured residing in the household of a named insured of PMA. On or about February 21, 1977, she was involved in an automobile accident in Erie County, sustaining injuries

1. Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. § 1009.101 et seq. (Purdon Supp.1983); since repealed, Act of February 12, 1984, P.L. ———, No. 11, (Senate Bill 942, P.N. 1646, Section 8(A)), effective October 1, 1984.

2. 40 P.S. § 1009.203.

3. *Id.,* § 1009.106.

which resulted in her hospitalization in three separate medical facilities. Her total hospital expenses were $40,919.87.[4]

On April 4, 1977, PMA issued a check to the first facility in which claimant had been hospitalized to pay for the expenses of Claimant's treatment. The hospital returned the check and advised PMA the bill had already been paid by Blue Cross. Subsequently, PMA attempted to promptly pay the charges incurred by Claimant at the second medical facility, and again was notified by that facility that Blue Cross had already paid the hospital charges in full. The trial court found[5] that PMA also attempted to pay the third facility, with the same result.

The original complaint had been filed on behalf of Claimant on October 25, 1978, alleging the accident, the injury, coverage with PMA, repeated demands for payment, and refusal by PMA to pay either the hospital expenses[6] or work loss benefits. On October 17, 1980, Claimant received $15,000 for work loss benefits upon PMA's Petition for Court Approval of Partial Settlement and entry of order thereon. At the time of filing the Stipulation in the trial court on February 26, 1982, it was agreed that the amount of hospital expenses were reasonable, fair and medically necessary, and that reasonable attorney's fees owed by Claimant, based on actual time expended, were in the sum of $8,323.95.

4. The Stipulation of Facts filed February 26, 1982 only refers to the hospitalization at St. Vincent's Health Center, Erie, Pennsylvania from February 21, 1977 to March 22, 1977 ($12,073.77) and at St. Francis General Hospital, Pittsburgh, Pennsylvania from March 22, 1977 to July 6, 1977 ($23,551.00). The Honorable Richard L. Nygaard, in his Opinion filed April 23, 1982, includes in his findings of fact that Appellee was hospitalized at Broad Street Hospital and Medical Center, Philadelphia, Pennsylvania, dates not specified, ($5,295.10). Appellant PMA, has not contested this finding on appeal, and we accept the trial court's finding of fact.

5. See footnote 4 *supra.*

6. At time of filing the complaint, the hospital expenses were alleged to be only $35,624.77, arising from the first two hospitalizations.

## II.

Before us, PMA argues that its obligation to pay basic loss benefits can be discharged by paying directly to the service providers.  It relies solely on that portion of Section 106 of the No-fault Act which provides, in pertinent part:

> An obligation for basic loss benefits for an item of allowable expense may be discharged by the obligor by reimbursing the victim or by making direct payment to the supplier or provider of products, services, or accommodations within the time mandated by this paragraph.

40 P.S. § 1009.106(a)(2).  PMA would ask us to hold that since the Claimant had not, herself, paid the hospitals, the obligor could not reimburse her, inasmuch as a dictionary definition of "reimbursement" contemplates the payment back to a person of money spent.  The insurer would alternatively ask us to accept its assertion that it has made direct payment to the suppliers of service.  We need not linger long on any analysis of PMA's contentions, since the simple fact remains that it neither sought to effect reimbursement of the victim nor has it actually made any direct payment to any of the hospitals.

■ Under the Act, no-fault benefits are payable monthly as loss accrues.  40 P.S. § 1009.106(a)(1).  While we agree that an insurer's obligation *may* be discharged either by reimbursement to the victim or by direct payment to the service provider, where *neither* has occurred, Section 106 of the Act affords no protection to PMA and the obligation remains intact.  PMA does not even contend that it attempted to make reimbursement to the victim.  And the formality of *attempting* to make direct payment to the hospitals, where tender is refused, falls short of the statutory requirement of actual payment.

## III.

Although we have no difficulty in rejecting PMA's contentions, the question remains whether a claimant may recover twice for the same economic losses within the clear meaning and intent of the No-fault Act.  We are mindful

that our supreme court has only recently held that an insured is precluded from recovering damages for economic detriment under the uninsured motorist coverage required in all liability policies by the Act of August 14, 1963, P.L. 909 [7] where that insured has already recovered the same economic losses under the basic loss provisions of a no-fault policy. *Tucci v. State Farm Insurance Co.*, 503 Pa. 447, 469 A.2d 1025 (1983), *rev'g Saunders v. State Farm Ins. Co.*, 294 Pa.Super. 424, 440 A.2d 538 (1982) and companion cases.

In rejecting a "double recovery" in *Tucci*, our supreme court examined the correlation between the purposes of the No-fault Act and the Uninsured Motorist Act. It determined that a coherent and comprehensive system of compensating and restoring motor vehicle accident victims required that the two acts be construed together as one statute, if possible, and concluded that our legislature intended that the earlier legislation [8] "become a rational part of the new comprehensive system." *Id.*, 503 Pa. at 454, 469 A.2d at 1028. It thus determined that duplicate recovery would not be allowed beyond the actual special damages an insured may suffer, where the issue of double recovery arises under two complimentary statutes.

However, the principle set forth in *Tucci* is not controlling on the instant facts. We are not here faced with two legislative enactments which must be construed together, but with a single statute and a private program of insurance. The legislature has provided for situations involving collateral benefits arising under private insurance programs, but only in a limited fashion.

The statutory provision pertinent to our analysis is Section 203 of the No-fault Act,[9] which deals with privately provided benefits, typically under some group coverage

7. 40 P.S. § 2000.

8. Act of August 14, 1963, the Uninsured Motorist Act.

9. 40 P.S. § 1009.203.

relating to the insured's employment. Sections 203(b) and (c) provide as follows:

### § 203.  Collate al benefits

. . . .

(b) The owner or operator of a motor vehicle may elect to provide for security in whole or in part for the payment of basic loss benefits through a program, group, contract or other arrangement that would pay to or on behalf of the victim or members of his family residing with him or the survivor of a deceased victim, allowable expense, loss of income, work loss, replacement services loss and survivors loss.  In all such instances, each contract of insurance issued by an insurer shall be construed to contain a provision that all basic loss benefits provided therein shall be in excess of any valid and collectible benefits otherwise provided through such program, group, contract or other arrangement as designated at the election of the owner or operator which shall be primary.

(c) An insurer providing basic loss benefits and tort liability in accordance with the provisions of subsection (b) above shall reduce the cost of such contract insurance to reflect the anticipated reduction in basic loss benefits payable by the insurer by reason of the election of the owner or operator to provide substitute security.

40 P.S. § 1009.203(b) and (c).

■ These subsections provide that an owner or operator of a motor vehicle may elect to provide security for basic loss benefits through a group or individual program, thus making the automobile insurance policy excess coverage to the private plan for basic loss benefits.  When this election is made by the insured, the insurer must then reduce the premium of the insurance contract to reflect the insurer's reduced exposure through payment of basic loss benefits.

■ There are specific requirements to be met in pursuing this option, as set forth in 31 Pa.Code § 66.53(c).  Without enunciating those requisites, suffice it to say that none of them are present here.  In this case, the insured made no

election and received a policy of insurance which included basic loss benefits. The insured received no reduction in his premium payments, and PMA does not contend otherwise. Because the election designating Blue Cross as the primary insurer and PMA as excess with respect to professional medical treatment and care was not made, we find no bar in Section 203 to the within claimant's right to recover under the PMA policy.

This conclusion is consistent with the analysis of private collateral benefits found in the treatise on the No-fault Act published by the Pennsylvania Trial Lawyers Association. D. Shrager, ed., *The Pennsylvania No-fault Motor Vehicle Insurance Act* (1979). In that work, the editor states, at page 148:

> The "benefits other than no-fault benefits" referred to in Section 203(a) clearly envisions medical and hospitalization plans paid for in whole or in part by the victim's employer. *The section does not prevent the victim from realizing a double recovery.* It simply requires that any savings which result from an offset provision in any medical or hospitalization plan must be passed on to the individual employee. (emphasis in original).

■ In passing, we note that Section 206 of the Act[10] provides that benefits received from social security (with certain narrow exceptions), workmen's compensation, state-required temporary, nonoccupational disability insurance, and all other benefits (except life insurance proceeds) from any government are to be subtracted from no-fault loss. This net loss provision of the Act, nevertheless, has been held not to include sick pay, *Erie Insurance Exchange v. Sheppard,* 39 Pa.Commw. 30, 394 A.2d 1075 (1978) or, exhaustible disability pay, *Tankle v. Prudential Property and Cas. Ins.,* 306 Pa.Super. 57, 452 A.2d 1 (1982).

■ Where our legislature has expressly provided for net loss calculations with regard to some categories of benefits (Section 206) and where at the same time it has provided for

**10.** 40 P.S. § 1009.206.

partial substitution for loss benefits under no-fault through other private programs of insurance (Section 203), we are reluctant to conclude that it intended to place Blue Cross benefits into a net loss category without expressly so providing.

Our conclusion that "double recovery" is allowed in the instant case is strengthened by a recent decision filed in the Third Circuit Court of Appeals. *Killeen v. Travelers Ins. Co.*, 721 F.2d 87 (1983). In that case, the court had to determine if the Assigned Claims Plan provisions of the No-fault Act, 40 P.S. § 1009.108, permitted an accident victim to recover under the Act for hospital and medical expenses previously paid by a Blue Cross/Blue Shield insurance plan. The Blue Cross/Blue Shield policy premium was paid by the claimant's father in fulfillment of his support obligations under an Ohio divorce decree.

■ The Court of Appeals, in an Opinion of the Court filed by the distinguished Judge Ruggero J. Aldisert, accepted the "instruction" from this court reiterated in *Crawford v. Allstate Insurance Co.*, 305 Pa.Super. 167, 171, 451 A.2d 474, 476 (1982) that if a court is to err in ascertaining the legislative intent behind the No-fault Act in close or doubtful cases, it should err in favor of extending coverage. Judge Aldisert went on to observe, by way of dicta:

If an individual, injured in an automobile accident is covered by a no-fault automobile insurance policy and, in addition, by a general health and accident policy, he or she may be entitled to reimbursement under each such policy for hospital and medical expenses incurred as a result of a motor vehicle accident. What amounts to a double recovery is allowed because the insured has paid two premiums and is entitled to the benefits purchased under each policy. Where, however, the injured individual is not covered by a privately purchased no-fault automobile insurance policy, but is covered only under a general health and accident policy, the reimbursements available through the Assigned Claims Plan will not,

unless a statutory exemption applies, allow a double recovery for incurred hospital and medical expenses. 721 F.2d at 89. (footnote omitted).

The section under review by the Court of Appeals was Section 108(a)(3) of the No-fault Act which provides:

(3) If an individual receives basic loss benefits through the assigned claims plan for any reason other than because of the financial inability of an obligor to fulfill its obligation, *all benefits* or advantages that such individual receives or is entitled to receive as a result of such injury, *other than* life insurance benefits or *benefits* by way of succession at death or *in discharge of familial obligations of support, shall be subtracted from loss in calculating net loss.*

40 P.S. § 1009.108(a)(3) (emphasis supplied).

The Court held that the payments made by Blue Cross/Blue Shield in discharge of the hospital and medical expenses were "benefits" intended to be excluded, as in discharge of a familial obligation of support, under Section 108(a)(3) of the Act. It therefore concluded that the claimant was entitled to double recovery.

Our own supreme court has had occasion to anticipate the narrow issue presently before us. In *Allstate Ins. Co. v. Heffner*, 491 Pa. 447, 421 A.2d 629 (1980), the court considered the possibility of double or overlapping recovery in the case which established that survivors of deceased victims could recover both survivor's loss and work loss benefits under the Act. Although not critical to the decision before it, the court, speaking through now-Chief Justice Nix, observed:

Even assuming such potential for double recovery, this fact, in and of itself, does not necessarily evidence a legislative intention to deny "work loss" benefits to survivors. As appellee Pontius points out in his brief, the legislature has allowed double recovery of other benefits under the Act. For example section 203 of the Act concerning Collateral Benefits permits victims to recover their medical expenses from Blue Cross and Blue Shield

and then recover the same expenses a second time from the no-fault carrier. It is apparent that the "vice" of double recovery was not foremost in the minds of the legislators when the No-fault Act was enacted. Consequently, the mere possibility of a double recovery by granting "work loss" benefits to survivors of deceased victims, does not seem contrary to either the express or implied intention of the legislature.

491 Pa. at 459, 421 A.2d at 635–36.

■ Finally, where the statute does not expressly prohibit a double recovery, we are inclined to give recognition to the collateral source rule which has long been a part of the law of this Commonwealth. To paraphrase that rule from tort law, the fact that a claimant under the No-fault Act has received compensation from a source other than the no-fault insurer is without relevancy in a suit brought by the claimant against the insurer to recover basic loss benefits for which the full premium has been paid. *Cf. Moidel v. Peoples Natural Gas Company,* 397 Pa. 212, 222, 154 A.2d 399, 403 (1959); *Denardo v. Carneval,* 297 Pa.Super. 484, 494–95, 444 A.2d 135, 140–41 (1982).

We have no difficulty, therefore, in affirming the award of basic loss benefits.

### IV.

In its Summary of Argument, PMA sets forth this theory to avoid the payment of statutory interest:

Since the obligation of the insured was discharged by the direct payment to the provider of services or accommodations said payments could not be overdue and thus could not bear interest.

Brief for Appellant, p. 8. It cites to *J.C. Penney Casualty Ins. Co. v. Liberty Mutual Ins. Co.,* 12 D & C 3d 340 (1979) as sole support for its assertion that timely payment by *Blue Cross* absolves PMA from any liability for interest. This argument is wholly unpersuasive.

Section 106(a)(2) of the No-fault Act states:

(2) No-fault benefits are overdue if not paid within thirty days after the receipt by the obligor of each submission of reasonable proof of the fact and amount of loss sustained, unless the obligor designates, upon receipt of an initial claim for no-fault benefits, periods not to exceed thirty-one days each for accumulating all such claims received within each such period, in which case such benefits are overdue if not paid within fifteen days after the close of each such period.... Overdue payments bear interest at the rate of eighteen per cent (18%) per annum.

The *J.C. Penney* case was an action for restitution between two insurers under the No-fault Act, where one insurer paid the benefits *due under the Act* to avoid the penalty provisions here at issue. That insurer then sought restitution from the insurer subsequently found to be liable for payment of benefits. In denying interest at 18% to the plaintiff insurer, the court in *J.C. Penney* correctly ruled that the Act only addresses the overdue situation between an obligor and a claimant. The case is totally inapposite on this appeal.

■ Having determined that the within claimant is entitled to recover basic loss benefits, the provision for payment of interest on any payments found to be overdue is clearly applicable. The 18% interest amount is owed regardless of the good faith of the obligor or the reasonableness of the delay. *Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 155, 425 A.2d 419, 421 (1981); *Baker v. Aetna Cas. & Sur. Co.,* 309 Pa.Super. 81, 95–96, 454 A.2d 1092, 1099–1100 (1982).

## V.

We turn now to the issue of whether the facts of this case support the award of attorney's fees. Section 107 of the Act provides, in part:

(3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part there-

of without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended.

40 P.S. § 1009.107(3).

■ We have previously stated that absence of judicial precedent may not invariably provide an insurance carrier with "reasonable foundation" for denying a claim under the Act, but where a non-frivolous issue is one of first impression, that fact is entitled to substantial weight in determining whether an obligor's denial of a claim is "without reasonable foundation." *Hayes v. Erie Ins. Exchange*, 261 Pa.Super. 171, 176, 395 A.2d 1370, 1373 (1978).

In its brief filed with the trial court on February 19, 1982, PMA placed its principal reliance, in contesting its obligation, upon Commissioner of Insurance Bulletin No. 16, issued October 17, 1975 and titled "Non-Duplication of Benefits Provided by No-fault Benefits in Auto Policies." Its argument in its brief was to the effect that Bulletin No. 16 "effectively made the group hospital insurance plans, such as Blue Cross, obligors within the context of the No-fault Act," Brief at p. 3, and therefore PMA was conclusively discharged from payment of benefits. Our review of that Bulletin, a copy of which was attached to the Brief, convinces us that the text of the Bulletin can only be read as providing an optional system of reduced benefits to be offered by health and accident insurance companies. It cannot be read as imposing obligor status upon such companies under the Act.

The brief filed by PMA on May 28, 1982, in support of its exceptions to the court's order from which this appeal is brought, understandably abandoned that argument, and sought to contend that Section 106 of the No-fault Act supplied a complete answer to claimant's position. That argument has been maintained on this appeal, and has been rejected in Section II of this opinion. We note that PMA has submitted no case law or citations to any authorities with respect to the principle issue of double recovery in its Brief for Appellant to this court and in Appellant's Reply

Brief, only cites to two cases referred to in the claimant's brief in Appellant's Reply Brief.

■■■ Appellant's argument that it has paid the hospitals and therefore should be released from its obligation to the claimant does not square with the stipulated facts. Without being referred to any law which would support such an argument, and knowing of none, we conclude that this attempted argument is frivolous. Likewise, PMA's protestation that it is unable to "reimburse" the claimant here involved because she is not the person who "spent the money" in discharging the hospital debts constitutes, in our view, a frivolous argument.

We note also that the issue of double recovery, as claimant points out in her brief, is neither novel nor complex. Long before this matter was submitted to the trial court upon stipulated facts (February 26, 1982), our supreme court had alluded to the right to secure double recovery following a Blue Cross payment. *Allstate Ins. Co. v. Heffner, supra.* Here, the work loss benefit was not paid by PMA until October 1980, three years and eight months after the accident and two years after complaint was filed, even though nothing appears in the record of this case to suggest the work loss claim was ever seriously contested on any ground.

The fact that payment was in fact directly tendered to the service providers by PMA within a short time after each hospitalization supports the trial court's finding that PMA had all the facts in its possession necessary to make a determination. Additionally, the fact that this particular issue of double recovery following Blue Cross payment did not reach our court until May 1982,[11] some seven years after the Act became effective, lends some support to claimant's charge that other insurance carriers have routinely honored such claims based on their reading and understanding of the Act.

11. Notice of Appeal was filed in our court May 28, 1982.

Our scope of review on this issue is whether the trial court abused its discretion in determining that the obligor had denied any significant part of the insured's claim without reasonable foundation, thereby justifying the award of attorney's fees. Given the substantial delay in settling the claim for work loss benefits, which represented a significant part of the claim, and the essentially frivolous nature of the arguments presented to this court on the principal issue, we cannot say that the trial court abused its discretion in awarding attorney's fees.

## VI.

The order from which this appeal is taken provided:

## ORDER

AND NOW, to-wit, this 23rd day of April, 1982, the Court finds as follows:

1. For the plaintiff in the amount of $40,919.87.

2. The amount of $35,624.77 is to bear interest at the rate of 18% per annum from the time said payment was overdue until the time of payment to the claimant, plaintiff.

3. The amount of $5,295.10 is to bear interest at the rate of 18% per annum from April 19, 1982 until the time of payment to the claimant, plaintiff.

4. Reasonable attorneys fees are awarded to the plaintiff in the amount of $8,223.95.

5. Costs of suit to be taxed to the defendant.

We affirm paragraphs 1, 3, 4 and 5 of the order, as filed. Because paragraph 2 of the order is silent as to the actual date or dates after which the payments of $12,073.77 and 23,551.00 were overdue, we vacate that portion of the order only. The earliest due date for payment of these benefits is thirty days after receipt of the claims by PMA. 40 P.S. § 1009.106(a)(2). Upon remand, the trial court shall conduct such hearing as may be necessary to (a) determine the due dates of the work loss benefits related to hospital treatment

provided at St. Vincent's Health Center and St. Francis General Hospital, (b) award judgment for interest due thereafter and (c) determine the reasonable fees due Claimant's attorneys as a result of appellant's continuing denial of the claim and the prolongation of this action through appeal. *Motley v. State Farm Mut. Aut. Ins. Co.*, 303 Pa.Super. 120, 449 A.2d 607 (1982), *aff'd* 502 Pa. 335, 466 A.2d 609 (1983); *Baker v. Aetna Cas. & Sur. Co.*, 309 Pa.Super. 81, 454 A.2d 1092 (1982).

Order affirmed in part and vacated in part. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.