Michael L. KILMER and Mark A. Kilmer, Plaintiffs,

v.

CENTRAL COUNTIES BANK, individually and t/d/b/a CCB Group Medical Plan, Defendant.

Civ. A. No. 83–1007.

United States District Court, W.D. Pennsylvania.

Dec. 9, 1985.

Richard M. Serbin, Levine, Reese & Serbin, Altoona, Pa., for plaintiffs.

Mary L. Silverberg, Paul A. Manion, Manion, Alder & Cohen, Pittsburgh, Pa., for defendant.

OPINION

COHILL, Chief Judge.

Presently before the court are the Plaintiffs' and Defendant's motions for summary judgment. This action was initially commenced in the Court of Common Pleas of Blair County, Pennsylvania then removed by Defendant to this court. The issues before us are: 1) whether this action was properly removed from state to federal court, and 2) whether Plaintiffs' claim under state law is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461 (1982).

*Facts*

On July 31, 1982, Plaintiff, Mark A. Kilmer, the son of Plaintiff, Michael L. Kilmer, was seriously injured in a vehicular collision on Route 220, Snyder Township, Blair County, Pennsylvania. At the time of the accident, Mr. Kilmer maintained medical coverage with Donegal Mutual Insurance Company, his no-fault carrier. In addition, Mr. Kilmer maintained medical coverage with the CCB Group Medical Plan, an employee benefit plan which was provided by his employer, Central Counties Bank. Since the commencement of this action, Central Counties Bank has been acquired by Mellon Bank, N.A.

On January 1, 1982, Central Counties Bank altered its health care coverage from a plan insured by an outside company, Blue Cross/Blue Shield, to its current self-insured coverage. As such, the bank relied on its general assets as a basis for coverage instead of purchasing insurance.

Pursuant to this change in coverage, the CCB Group Medical Plan no longer provided primary insurance and would only pay claims which were not covered by another insurer. The Plan's "Coordination of Benefits" section provides for the reduction of a participant's benefits in proportion to any additional coverage which is similar to those benefits provided under the plan. Specifically, Article VI, ¶ 6.8(a) provides:

6.8 If a person who is covered for any benefits under this Plan (to which this provision applies) is covered simulta-

neously under any other plan, which provides health benefits similar to those provided under this Plan, payment of benefits for that person under this Plan shall be resolved in accordance with the following order of benefit determination:

a. If any other plan does not contain provisions which would coordinate its benefits or reduce its benefits by any benefits paid or payable under this Plan, benefits of the other plan shall be determined prior to determination of the benefits of this Plan.

Stipulation of Facts, at Exhibit 2. Furthermore, the "General Exclusions" section of the CCB Group Medical Plan does not cover claims due to injury or sickness "to the extent that payment is made or required to be made under the terms of any 'No-Fault' type of automobile provision." Article X, ¶ 10.13. In response to these amendments, the monthly premium for adding a family member to coverage under the CCB Group Medical Plan was reduced from $8.00 to $5.00.

On November 23, 1982, Johnson Administrators, who were responsible for managing the CCB Group Medical Plan, received a claim for the medical benefits which had already been reimbursed by Mr. Kilmer's no-fault carrier. On January 13, 1983, Johnson Administrators rejected the claim for the reason that the CCB Group Medical Plan was self-funded and therefore governed by ERISA, which preempted the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. §§ 1009.101–1009.701, *repealed* and *superseded* by the Motor Vehicle Financial Responsibility Law, 75 Pa.C. S.A. §§ 1701–1798, *as amended* (effective October 1, 1984).

On March 2, 1983, Plaintiffs filed a complaint in assumpsit in the Court of Common Pleas of Blair County, Pennsylvania. Plaintiffs have based their claim for the recovery of medical expenses upon § 203 of the No-fault Act, 40 P.S. § 1009.203, which has been interpreted by Pennsylvania courts to allow double recovery under limited circumstances. *See, e.g., Steppling v. Pennsylvania Manufacturers' Ass'n In-*

*surance Co.,* 328 Pa.Super. 419, 477 A.2d 515 (1984) (§ 203 of No-fault Act, when read in conjunction with § 106, permits double recovery from no-fault carrier where medical expenses have already been reimbursed by Blue Cross).

On April 28, 1983, Defendant filed a petition to remove the present action to this court pursuant to 28 U.S.C. § 1441, which confers federal removal jurisdiction over any civil action over which the district courts would have had jurisdiction had the case been brought there originally.

In its petition, the Defendant asserts that this court has original jurisdiction under § 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), and that Plaintiffs' claim may be removed to this court pursuant to 28 U.S.C. § 1441. Specifically, § 502(e)(1) provides as follows:

(e) Jurisdiction

(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section.

29 U.S.C. § 1132(e)(1). Section 502 (a)(1)(B) provides:

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary—

....

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. § 1132(a)(1)(B). Alternatively, the Defendant contends that this court has original jurisdiction pursuant to 28 U.S.C. 1331 since Plaintiffs' claim arises under the laws of the United States (i.e., ERISA) and a federal question is presented.

Subsequently, the Plaintiffs filed an answer to Defendant's petition for removal on May 4, 1983. On May 31, 1983, Defendants filed their answer to Plaintiffs' complaint. A stipulation of facts was agreed upon, and both parties then filed their respective motions for summary judgment. Before the court can address the merits of the case, it must determine whether its removal jurisdiction is proper. 28 U.S.C. § 1447(c).

### DISCUSSION

1. *Removal Jurisdiction of this Court*

At the outset, we note that removal jurisdiction is derivative in nature. "If the state court lacks jurisdiction of the subject matter or of the parties, the Federal court acquires none, although it might in a like suit, originally brought there, have had jurisdiction." *Lambert Run Coal Co. v. Baltimore & Ohio R.R.,* 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922). Since ERISA provides for concurrent state and federal jurisdiction of claims to recover benefits under the terms of a plan, 29 U.S.C. § 1132(a)(1)(B), we are not faced with such a problem here. However, all other ERISA civil actions are matters over which federal courts have exclusive jurisdiction. 29 U.S.C. § 1132(e)(1).

In light of the fact that federal courts are courts of limited jurisdiction, the removal statute involved here, 28 U.S.C. § 1441, must be strictly construed, and the burden of establishing federal jurisdiction is upon the removing party. *See American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 10, 71 S.Ct. 534, 538, 95 L.Ed. 702 (1951); *Salveson v. Western States Bankcard Ass'n,* 731 F.2d 1423, 1426 (9th Cir.1984); *LaChemise Lacoste v. The Alligator Co.,* 506 F.2d 339, 344 (3d Cir.1974), *cert. denied,* 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94, *reh'g denied,* 421 U.S. 1006, 95 S.Ct. 2408, 44 L.Ed.2d 674 (1975); *Brunwasser v. Mulvihill,* 490 F.Supp. 965 (W.D. Pa.1980) (Cohill, J.). The Supreme Court has interpreted the removal statute as reflecting a congressional policy of severe

abridgement of the right to remove a state action to federal court. *Phillips Petroleum Co. v. Texaco*, 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941).

■ Defendant's removal petition contends that Plaintiffs' state law claim is, in essence, for the recovery of benefits allegedly due under an ERISA plan; thus, Plaintiffs' claim arises under federal law. However, it is axiomatic that a case arises under federal law only if a federal question appears on the face of the Plaintiffs' well-pleaded complaint unaided by the answer or petition for removal. *See, e.g., Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Westmoreland Hospital Ass'n v. Blue Cross of Western Pennsylvania*, 605 F.2d 119, 122 (3d Cir.1979), *cert. denied*, 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980). Since removal jurisdiction exists only if jurisdiction would originally have been proper in federal court, the "well-pleaded complaint" rule applies to removal cases as well. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Hunter v. United Van Lines*, 746 F.2d 635, 639 (9th Cir.1984).

■ Therefore, the fact that a defendant may assert an affirmative defense grounded upon federal law is not a basis for federal jurisdiction. A federal right or immunity must be ascertained as an essential element of the plaintiff's cause of action for the lawsuit to be maintained in federal court. *See Gully v. First National Bank*, 299 U.S. at 112, 57 S.Ct. at 97, 81 L.Ed. at 72. Thus, a defendant cannot remove a state law claim from state to federal court even if his defense is based entirely on federal law. *See Northeast Dept. ILGWU v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147 (3d Cir.1985).

■ When applying the above principle, courts have consistently held that "the party who brings a suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 411, 57 L.Ed. 716 (1913). Moreover, "where plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground." *Salveson v. Western States Bankcard Ass'n*, 731 F.2d at 1427 (quoting 1A *Moore's Federal Practice* ¶ 0.160 at 185 (2d ed. 1979)). "Great weight is therefore given to plaintiff's chosen forum, and any legitimate doubts as to the existence of federal jurisdiction must be resolved against removal and in favor of remand." *Stokes v. Bechtel North American Power Corp.*, 614 F.Supp. 732, 736 (N.D.Cal.1985).

Applying these principles to Plaintiffs' complaint in the instant case, there does not appear to be a basis for federal jurisdiction since the claim asserted in the complaint does not explicitly rely upon ERISA or any other federal statute. Plaintiffs' claim is grounded solely upon § 203 of Pennsylvania's No-fault Act. Thus, the present cause of action appears to be governed by state law and the CCB Group Medical Plan concededly could not have removed the present action to this Court on the basis of the literal recitals of Plaintiff's complaint.

On the other hand, several courts have found removal proper under circumstances analogous to those presented here. *See, e.g., Chilton v. Savannah Foods, Inc., ESOP*, (S.D.Ga.1985); *Tolson v. Retirement Committee of the Briggs & Stratton Retirement Plan*, 566 F.Supp. 1503 (E.D. Wis.1983); *McConnell v. Marine Engineers Beneficial Association*, 526 F.Supp. 770, 773 (N.D.Cal.1981); *Leonardis v. Local 282 Pension Trust Fund*, 391 F.Supp. 554, 557 (E.D.N.Y.1975). *See also Roe v. General American Life Insurance Co.*, 712 F.2d 450 (10th Cir.1983) (removal proper because plan was regulated under ERISA). However, a definite split of authority exists as some courts have taken an opposite view. *See e.g., Taylor v. General Motors Corp.*,

763 F.2d 216 (6th Cir.1985) (removal of action alleging state claims was improper despite contention that ERISA governed plan); *Lederman v. Pacific Mutual Life Insurance Co.,* 494 F.Supp. 1020 (C.D. Cal.1980) (removal improper because plaintiff has choice of forum). The Court of Appeals for the Third Circuit has not, to our knowledge, addressed this issue.

### 2. *Federal Preemption and the "Artful Pleading" Doctrine*

■ Defendant argues that Plaintiffs' claim is preempted by ERISA's broad preemption clause, 29 U.S.C. § 1144, which displaces all state laws which relate to any employee benefit plan as described in ERISA. Generally, preemption is a defense and therefore "can not be considered when determining whether the complaint contains any federal question claims which support federal court jurisdiction." *Shiffler v. Equitable Life Assurance Society of the United States,* 609 F.Supp. 832, 835 (E.D.Pa.1985). In *Trent Realty Associates v. First Federal Savings and Loan Association of Philadelphia,* 657 F.2d 29 (3d Cir.1981), the court noted:

> Experienced litigators may almost certainly expect that a defendant will assert federal preemption if that doctrine supports its position, but this anticipated defense is indistinguishable for this purpose from the defense that federal law precludes maintenance of the state claim. Because the unavailability of removal in the latter situation is solidly entrenched, *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), we can find no basis for removal jurisdiction in the anticipated defense of federal preemption.

657 F.2d at 35. Thus, subject matter jurisdiction is not conferred upon the court solely by the defendant invoking the defense of preemption.

■ However, an independent corollary of the well-pleaded complaint rule is the "artful pleading" doctrine which provides that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint. *Franchise Tax Board,* 463 U.S. at 22, 103 S.Ct. at 2853. The "artful pleading" doctrine is a form of judicial construction wherein the court examines the underlying nature of a complaint when the plaintiff has improperly attempted to defeat removal by pleading what in actuality is a federal cause of action, albeit disguised as a state claim.

Under "artful pleading," instead of simply accepting the literal recitals of a plaintiff's complaint—which would result in a remand by the federal court for lack of subject matter jurisdiction when the claim arises under state law—the district court (a) recharacterizes plaintiff's state law claims as federal claims, (b) exercises jurisdiction over them, and (c) proceeds to consider whether the plaintiff should prevail under federal law. *Hunter v. United Van Lines,* 746 F.2d at 641.

In *Salveson v. Western States Bankcard Association,* 731 F.2d at 1427, the Ninth Circuit Court of Appeals stated that "[t]he artful pleading doctrine is to be invoked only in *exceptional circumstances* as it raises difficult issues of state and federal relationships and often yields unsatisfactory results." While there is no concrete definition of what circumstances are "exceptional," the doctrine applies in the preemption context when plaintiff has a federal claim to assert and attempts to defeat removal by fraudulent means or by "artfully" characterizing a federal cause of action as a state law claim. *Hunter,* 746 F.2d at 642. Recognizing the difficulty in drawing a distinction between the well-pleaded complaint cases, which are non-removable, and the "artful pleading" cases, which are removable, the Court in *Hunter* set forth guidelines for determining whether to apply the artful pleading doctrine. First, the court must determine whether federal preemption exists; if not, there is no federal jurisdiction, and remand is the proper course. If preemption exists, the court must then determine whether a remedy is provided by federal law. As the Court in *Hunter* stated:

"Thus, at least in this Circuit, removal is improper when federal law simply displaces state law without replacing the state cause of action with a federal one. When federal law displaces state law without supplanting it, a plaintiff cannot be deemed to be attempting to avoid a federal cause of action; there is no federal cause of action to avoid. In such a case, federal preemption operates only as a defense.

746 F.2d at 643 (footnote omitted); *see also Guinasso v. Pacific First Federal Savings & Loan Ass'n*, 656 F.2d 1364, 1367 (9th Cir.1981), *cert. denied*, 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982).

In *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 (9th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 2319, 85 L.Ed.2d 839 (1985), the court held that the plaintiff's state law claims could be recharacterized as federal claims since the state law was preempted by federal law, and it was apparent from a review of the complaint that federal law provided a cause of action to remedy the wrongs asserted in plaintiff's complaint. *See also Fristoe v. Reynolds Metal Co.*, 615 F.2d 1209 (9th Cir.1980) (removal was proper because an alleged breach of a collective bargaining agreement states on its face an action under the federal Labor Management Relations Act). The *Garibaldi* court appeared to discourage a removal court from looking beyond the four corners of the complaint in order to determine whether removal was proper under the artful pleading doctrine. 726 F.2d at 1370 n. 5. However, the Ninth Circuit Court, in *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468 (9th Cir.1984), laid to rest its earlier doubts when it stated:

The artful pleading doctrine would afford little protection if a plaintiff could avoid federal jurisdiction simply by leaving out material facts ... [T]he defendant's removal petition may be considered because the plaintiff's complaint—especially one that is "artfully pleaded"—is likely to omit facts necessary for the court to determine the true nature of the complaint.... We conclude that in de-

termining whether a complaint is "artfully pleaded", the court is not bound to consider only the facts pleaded in the complaint but *may look elsewhere* to ascertain facts that would appear in a "well pleaded" complaint. If on those facts it is apparent that the plaintiff can only proceed under federal law, the complaint is properly removable.

*Id.* at 1473 (citations omitted) (emphasis added). We find the reasoning of *Olguin* to be persuasive and directly applicable to the instant case. We also note that the rationale of *Olguin* has been applied in a recent Memorandum Opinion authored by District Judge Alan N. Bloch of this Court, which raises similar issues of preemption and artful pleading in an ERISA context. *See Popovec v. United Technologies*, C.A. No. 85–1611, slip op. at 6 (W.D.Pa. Oct. 4, 1985) (case remanded to state court because defendant's petition to remove stated that at least part of the severance pay program at issue was not subject to ERISA preemption).

The artful pleading doctrine has most frequently been applied to cases which fall within the purview of § 301 of the Labor Management Relations Act ("LMRA"), *see Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and it has been suggested that this doctrine is uniquely applicable to federal labor law issues. *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359 (5th Cir.1984). In taking a restrictive view of the doctrine, some courts have declined to apply it to suits in which the claim based on state law is allegedly displaced by ERISA. *See, e.g., Taylor v. General Motors Corp.*, 763 F.2d 216 (6th Cir.1985); *Powers v. South Central United Food & Commercial Workers Unions and Employers Health & Welfare Trust*, 719 F.2d 760 (5th Cir.1983); *Bell v. Amcast Industrial Corp.*, 607 F.Supp. 486 (S.D. Ohio 1985).

■ However, the Supreme Court in *Franchise Tax Board*, stated that the artful pleading doctrine is not limited to labor

law disputes. Relying on the principles articulated in *Avco*, Justice Brennan, speaking for a unanimous Court, stated:

> Avco stands for the proposition that if a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily "arises under" federal law.
>
> .... It may be that as with § 301 [of the LMRA] as interpreted in Avco, any state action coming within the scope of § 502(a) of ERISA would be removable to federal district court, even if an otherwise adequate state cause of action were pleaded without reference to federal law.

*Franchise Tax Board*, 463 U.S. at 23–24, 103 S.Ct. at 2854 (footnotes omitted). While the Court in *Franchise Tax Board* ultimately found that the "artful pleading" doctrine was inapplicable there, it is evident from its analysis that where a complaint does not explicitly present federal claims, the lawsuit may be removed to federal court if a federal statute displaces the claim under state law. *Id. See Shiffler*, 609 F.Supp. at 836.

### 3. *Application of the Above Principles*

■ While there is no reference to ERISA on the face of Plaintiffs' complaint, it does mention that the CCB Group Medical Plan provided the Plaintiffs with health insurance—the benefit which Plaintiffs seek to recover under their state law claim. However, as stated previously, this court is not bound by the four corners of Plaintiffs' complaint, and "may look elsewhere" to clarify whether Plaintiffs' claim encompasses an action within federal jurisdiction. *Olguin, supra*, 740 F.2d at 1473. While the Defendant's petition to remove does not contain the magic word "preemption," it clearly alleges that the present action falls within the exclusive parameters of ERISA. It also should be noted that prior to the filing of this lawsuit, Plaintiffs' initial claim was rejected by Johnson Administrators, who informed Plaintiffs in a letter that ERISA preempted their claim. Despite this revelation, Plaintiffs proceeded to file the instant action in state court. Thus, the

unique facts of this case are tailormade for the application of the artful pleading doctrine.

We must now examine whether, as Defendant alleges, Pennsylvania's No-fault Act is preempted by ERISA. If there is no preemption, the inquiry ends, and the case must be remanded to state court. However, if it is ascertained that Plaintiffs' claim is indeed preempted by ERISA, then the inquiry turns to whether or not ERISA confers an exclusive federal remedy. *Hunter, supra*, 746 F.2d at 642.

### A) *ERISA Preemption*

As noted above, § 514(a) of ERISA contains a broad preemption clause which states that the statute shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). If a state law has a "connection with or reference to" an employee benefit plan, it "relates to" such a plan within the meaning of that section. *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). While § 514(a) of ERISA broadly preempts state laws that relate to an employee benefit plan, that preemption is substantially qualified by § 514(b)(2)(A) of ERISA, the "insurance saving clause," which broadly states that nothing in ERISA "shall be construed to exempt or relieve any person from any 'law of any State which regulates insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A). A single exemption to the "saving clause" is found in § 514(b)(2)(B), the so-called "deemer clause," which states that no employee benefit plan, with certain exceptions not pertinent here, "shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B).

Plaintiffs assert that § 203 of the Pennsylvania No-fault Act, 40 P.S. § 1009.203, is a statute regulating insurance and thus it is saved from preemption by the insurance saving clause of ERISA, 29 U.S.C. § 1144(b)(2)(A). Defendant counters by asserting that the "deemer clause" of § 514(b)(2)(B) governs the instant dispute since the ERISA-covered employee benefit plan is not to be deemed an insurance company or other insurer for purposes of any state law regulating insurance. 29 U.S.C. § 1144(b)(2)(B).

The Supreme Court's recent decision in *Metropolitan Life Insurance Co. v. Massachusetts*, —— U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), interpreted the meaning and scope of the insurance saving clause, and is, we believe, dispositive of the present case. In *Metropolitan Life,* two insurance companies mounted a challenge against a Massachusetts statute that required all insurers, including those who *sold* policies to employee benefit plans, to provide insurance coverage for mental health care services. The insurers attacked the validity of the so-called mandated benefit law by contending that the state statute was preempted by ERISA. A unanimous Supreme Court rejected the insurers' arguments and held that while the state statute clearly related to pension plans governed by ERISA, the Massachusetts statute was saved from preemption since it regulates insurance and is therefore subject to the insurance saving clause. *Id. See also Dedeaux v. Pilot Life Insurance Co.,* 770 F.2d 1311 (5th Cir.1985) (*Metropolitan Life* applied; no preemption of state contract and tort claims); *Michigan United Food and Commercial Workers Unions v. Baerwaldt,* 767 F.2d 308 (6th Cir.1985) (*Metropolitan Life* applied; no preemption of state mandated benefit law requiring substance abuse coverage).

However, the *Metropolitan Life* Court went on to note:

We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to direct regulation while the latter are not.

By so doing we merely give life to a distinction created by Congress in the "deemer clause," a distinction Congress is aware of and one it has chosen not to alter. We also are aware that appellants' construction of the statute would eliminate some of the disuniformities currently facing national plans that enter into local markets to purchase insurance. Such disuniformities, however, are the inevitable result of the congressional decision to "save" local insurance regulation. Arguments as to the wisdom of these policy choices must be directed at Congress.

*Id.* at ——, 105 S.Ct. at 2393 (footnote omitted). Thus, *Metropolitan Life* drew a distinction between insured plans, those plans which purchase insurance contracts, and self-insured plans, like that in the present case, which utilize an employer's assets to provide coverage.

Applying *Metropolitan Life* to the instant case, it is indisputable that: 1) Defendant's self-insured plan is not subject to state insurance regulation; 2) that it is preempted by ERISA; and 3) that it fails to come under the auspices of ERISA's saving clause. Moreover, an attempt to treat Defendant as if it were an insurance company would clearly fly in the face of the "deemer clause" which, as stated before, prohibits the characterization of an ERISA-covered plan as an insurance company. 29 U.S.C. § 1144(b)(2)(B). *See Standard Oil Co. of California v. Agsalud,* 633 F.2d 760 (9th Cir.1980), aff'd, 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981); *Hewlett-Packard Co. v. Barnes,* 571 F.2d 502 (9th Cir.1978) *cert. denied,* 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978).

At this juncture, we have determined that Plaintiffs' claim is preempted by ERISA; thus the first step of the artful pleading analysis has been satisfied.

The next step is to determine whether ERISA confers a federal remedy in the matter which is comprehensive in scope and coextensive with available state remedies. *Hunter,* 746 F.2d at 642. If such a remedy exists under federal law, then the

district court is "indeed presented with a complaint which has been artfully pled to defeat adjudication in the federal forum, and jurisdiction there is proper." *Stokes,* 614 F.Supp. at 739.

B) *The Federal Remedy Under ERISA*

ERISA comprehensively regulates employee pension and welfare plans if they are established or maintained "by an employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). An employee welfare benefit plan or welfare plan is defined as one which provides to employees "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability [or] death," whether such benefits are provided "through the purchase of insurance or otherwise." 29 U.S.C. § 1002(1). We conclude that the CCB Group Medical Plan is covered by the above provisions.

In addition, as noted above, § 502(a)(1)(B) of ERISA explicitly provides that a participant or beneficiary may bring a civil action to recover benefits due to him under the terms of his plan. 29 U.S.C. § 1132(a)(1)(B). Therefore, ERISA confers a federal remedy upon the plaintiffs and the final step of the artful pleading analysis has been completed. As such, this Court has indeed been presented with a complaint which has been artfully pled to avoid adjudication before it.

In summary, we conclude that Plaintiffs' claim is preempted by ERISA, which provides a federal remedy. However, the ERISA remedy has been satisfied since Plaintiffs have already recovered their medical expenses from Donegal Mutual Insurance Company and, as stated above, Article X, ¶ 10.13 of the CCB Group Medical Plan specifically excludes the recovery of medical benefits previously paid by a "no-fault" carrier. Thus, Plaintiffs' claim for double recovery must fail.

## CONCLUSION

It follows from the foregoing that Plaintiffs' motion for summary judgment must be denied. Because we find that there are no material issues of fact in dispute, and that Defendant is entitled to judgment as a matter of law, we will grant Defendant's motion for summary judgment.