640 F.Supp. 191 (1986)
MICHIGAN MUTUAL INSURANCE COMPANY, a Michigan corporation, as Agent for the Michigan Assigned Claims Facility, Plaintiff and Counter-Defendant,
v.
The TRUSTEES OF the MICHIGAN CONFERENCE OF TEAMSTERS WELFARE FUND, as Agent for the Michigan Conference of Teamsters Welfare Plan and Fund, Defendant and Counter-Plaintiff.
No. 85-CV-73915-DT.
United States District Court, E.D. Michigan, S.D.
July 29, 1986.
*192 Barris, Sott, Denn & Driker by Stephen E. Glazek, Morley Wittus, Detroit, Mich., for plaintiff and counter-defendant.
Fealk, Ellis & Lazar, P.C. by Sheldon A. Fealk, Farmington Hills, Mich., for defendant and counter-plaintiff.

OPINION
GILMORE, District Judge.
This matter is before the Court on cross motions for summary judgment.
On November 20, 1983, Matthew J. Feenstra suffered serious injuries in an automobile accident. No one involved in the accident had no-fault personal protection coverage that applied to Feenstra's injuries. Feenstra was, however, a participant in the Michigan Conference of Teamsters Welfare Fund ("Teamsters Welfare Fund") at the time of the accident. He filed a claim with the Teamsters Welfare Fund, and it began to pay his medical bills because of a delay in identifying a carrier to pay no-fault coverage for him.
On April 24, 1984, Feenstra's guardian filed a claim for no-fault personal protection benefits with the Michigan Assigned Claims Facility under M.C.L.A. 500.3171 et seq. Under that statute, a person who sustains an injury in an automobile accident, but for whom no personal protection insurance is applicable, can receive benefits through an assigned claims plan from an insurance carrier assigned to the claim by the Assigned Claims Facility. Plaintiff Michigan Mutual Insurance Fund ("Michigan Mutual") was assigned to Feenstra's claim. In this lawsuit, Michigan Mutual, as plaintiff, contends that the Teamsters Welfare Fund is fully liable for Feenstra's medical benefits, and seeks reimbursement for the sum it has paid out on his claim. Teamsters Welfare Fund, on the other hand, claims that Michigan Mutual is primarily liable, and is not entitled to recover *193 any reimbursement for medical benefits it has paid. Michigan Mutual is now making Feenstra's medical payments.
On March 29, 1985, M.C.L.A. 500.3172(2)[1] went into effect. This statute provides that no assigned claim benefits shall be paid where another benefit source is available. The dispute between Michigan Mutual and the Teamsters Welfare Fund must therefore be divided into two time periods, that before March 28, 1985 and that after March 28, 1985.

I. LIABILITY BEFORE MARCH 28, 1985
The Trustees of the Teamsters Welfare Fund interpreted the Plan's Non-Duplication of Benefits Clause and its Subrogation of Benefits Clause to mean that it is not primarily liable for Feenstra's medical claims. Generally, decisions of employee benefit plans, as defined by ERISA, 29 U.S.C. 1001 et seq., may only be reversed under federal law if they are arbitrary, capricious, or made in bad faith. Rhoton v. Central States, Southeast & Southwest Areas Pension Fund, 717 F.2d 988 (6th Cir.1983), and Elser v. I.A.M. National Pension Fund, 684 F.2d 648 (9th Cir.1982), cert. denied, 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983). Therefore, the issue is whether the interpretations of the Teamsters Welfare Fund Trustees is reasonable, and not arbitrary or capricious.
The Teamsters Welfare Fund's Non-Duplication of Benefits Clause reads as follows:
9. Non-Duplication of BenefitsNo benefits shall be payable under this Plan with respect to expenses incurred or services furnished in connection with hospital confinement, services, supplies, treatment or any medical or dental care (a) payable or to be furnished under any other employee Benefit Plan, Policy of Insurance, Franchise, Blue Cross, Blue Shield or other Service or Prepayment plan, regardless of whether it is a group plan or individual coverage, or whatsoever type, or (b) payable under an automobile insurance policy issued in conformity with or pursuant to "No-Fault" Insurance Laws, but only to the extent same is payable.
Even though paragraph 9(b), supra, refers to a policy of insurance and not an assigned claim benefit, the decision of the Teamster Welfare Fund Trustees is not unsupported by Plan language. It is clear that the language of the plan can fairly be read to indicate that a benefit paid under a no-fault law would take priority over the Teamster Welfare Fund Plan. Therefore, the Trustee's decision is not arbitrary, capricious, or made in bad faith, and consequently Michigan Mutual is primarily liable for Feenstra's medical benefits prior to March 28, 1985.

II. LIABILITY AFTER MARCH 28, 1985
Section 514(a) of ERISA contains a broad preemption clause that states that the statute shall "supersede any and all state laws insofar as they may now or hereinafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).[2]
In Metropolitan Life Insurance Company v. Commonwealth of Massachusettes, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Court said that the words "relate to" have their common sense meaning, such that a state law relates to an *194 ERISA-regulated benefit plan if it has a connection with or reference to them, even indirectly. Since the Michigan statute, which went into effect on March 29, 1985, affects the coordination of benefits between various types of coverages, the types of benefits offered, and the structure of the employee benefit plans, the statute sufficiently "relates to" the employee benefit plan to call the preemption provision into play.
While Section 514(a) of ERISA broadly preempts state laws that relate to an employee benefit plan, that preemption is qualified by Section 514(b)(2)(A), the "Saving Clause," which states, "Except as provided in subparagraph (B), nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities." 29 U.S.C. § 1144(b)(2)(A). An exception to the "Saving Clause" is § 514(b)(2)(B), the "Deemer Clause," which states:
(B) Neither an employee benefit plan described in section 1003(a), which is not exempt under section 1003(b), (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.
The fact here is that the Teamster Welfare Fund does not buy insurance; rather, it is self-insured. Therefore, under the "Deemer Clause," it cannot be considered to be an insurer for the purpose of any state statute purporting to regulate insurance.
It therefore becomes clear that a state statute cannot be applied to a self-insured employee benefit plan. In Metropolitan Life, the court noted:
We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause" a distinction Congress is aware of and one it has chosen not to alter.
471 U.S. at ___, 105 S.Ct. at 2393, 85 L.Ed.2d at 745.
Michigan United Food and Commercial Workers Unions v. Baerwaldt, 767 F.2d 308 (6th Cir.1985), cert. denied, ___ U.S. ___, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986), supports this application of Metropolitan Life. There, the court held that a benefit plan which purchased insurance was saved from preemption by the ERISA Saving Clause. In so holding, the court noted that, under Metropolitan Life, insured plans are open to indirect regulation, while uninsured plans are not.
Further, in Kilmer v. Central Counties Bank, 623 F.Supp. 994, 1001 (D.C.PA.1985), a case very similar to the instant case, the court noted: "Moreover, an attempt to treat Defendant as if it were an insurance company would clearly fly in the face of the "deemer clause" which ... prohibits the characterization of an ERISA covered plan as an insurance company." Consequently, if the Teamsters Welfare Fund were an insured plan, it would fall within the Saving Clause and would be "open to indirect regulation" by state statute. However, since The Teamster Welfare Plan is an uninsured plan, it falls within the "Deemer Clause" and is not open to indirect regulation by state insurance laws.
In sum, the Teamster Welfare Fund cannot be held primarily liable for Feenstra's benefits because it is a self-insured plan that is exempted by the "Deemer Clause," and is not subject to M.C.L.A. 500.3172(2).
It therefore follows that Michigan Mutual is liable for Feenstra's medical benefits for both the period before March 28, 1985, and the period after that date. Plaintiff Michigan Mutual's motion for summary judgment is denied, and defendant Teamster *195 Welfare Fund's motion for summary judgment is granted.
NOTES
[1] This Statute in full states:

Except as otherwise provided in this subsection, personal protection insurance benefits, including benefits arising from accidents occurring before the effective date of this subsection, payable through an assigned claims plan shall be reduced to the extent that benefits covering the same loss are available from other sources, regardless of the nature or number of benefit sources available and regardless of the nature or form of the benefits, to a person claiming personal protection insurance benefits through the assigned claims plan.
[2] The full Clause reads as follows:

(a) [PRE-EMPTION CLAUSE] Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) and not exempt under section 1003(b)....